DAVID M. NOVAK, Indiv. and as Adm'r, Appellant, v. A. RATHNAM *et al.*, Appellees.

*Opinion filed May 24, 1985.*

Leonard M. Ring and Associates, of Chicago (Leonard M. Ring, Judith E. Fors and Margaret A. McGuire, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

On April 5, 1982, the plaintiff, David M. Novak filed a wrongful death action in the circuit court of Peoria County, alleging that the defendants Allen Rathnam, a psychiatrist, and David Girmscheid, a psychologist, employees of the Zeller Mental Health Center (Zeller) in

Peoria, Illinois, were negligent in approving the discharge of Robert Lee Endicott, who also was named as a defendant, from Zeller. Subsequent to his release, Endicott traveled to Florida, where he shot and killed Beverly Novak, the plaintiff's daughter. On March 7, 1983, the circuit court of Peoria County ordered Rathnam and Girmscheid to submit to discovery depositions regarding their professional treatment of Endicott. The circuit court stayed that order, however, pending the disposition of an interlocutory appeal on a question certified under Rule 308 (87 Ill. 2d R. 308). The question was whether Rathnam and Girmscheid were barred under the Mental Health and Developmental Disabilities Confidentiality Act (the Act) (Ill. Rev. Stat. 1981, ch. 91½, par. 801 *et seq.*) from testifying. The appellate court held that Rathnam and Girmscheid could not be compelled to testify and reversed the judgment of the circuit court. (119 Ill. App. 3d 847.) We allowed the plaintiff's petition for leave to appeal under our Rule 315 (87 Ill. 2d R. 315).

As stated, Rathnam and Girmscheid were employed at Zeller and treated Endicott, who had been involuntarily committed. Endicott was committed and treated on two occasions for one-month periods. It was after his second release from Zeller on March 24, 1978, that he traveled to Florida and on May 4, 1979, shot and killed Beverly Novak.

Endicott was tried for murder in Florida. During the trial he called four psychiatrists, including Rathnam, for the purpose of establishing that he was insane at the time of the killing. Endicott also introduced at trial his Zeller medical records, including a discharge summary and a psychiatric evaluation prepared by Rathnam and Girmscheid, which detailed their diagnosis and treatment of Endicott while a patient at Zeller. During his testimony, Rathnam was questioned about the reports and

testified in detail as to the treatment Endicott received while at Zeller. He concluded his testimony by stating that, at the time Endicott was treated at Zeller, he could not appreciate the difference between right or wrong and could not understand the nature of his actions. Endicott was found not guilty by reason of insanity, and he is confined at a State hospital in Florida.

In the wrongful death action here, Rathnam and Girmscheid refused to allow their depositions to be taken, which the plaintiff had moved for, on the ground that any information concerning their treatment or evaluation of Endicott is deemed confidential and privileged under the Act. Thereafter, the circuit court entered an order compelling them to submit to the depositions, holding that Rathnam's testimony at Endicott's trial in Florida was a waiver by Endicott of any privilege of confidentiality conferred by the Act. Under our Rule 308 (87 Ill. 2d R. 308), the court stayed its order on the ground that an immediate appeal would materially advance the termination of the litigation, and it certified for interlocutory appeal the question of whether there was a waiver of the privilege.

On the appeal by Girmscheid and Rathnam, the appellate court first held that under the Act they could assert a testimonial privilege on behalf of Endicott. The court then held that even though confidential information had previously been disclosed at the Florida trial, the defendants continued to have the right to assert the privilege as to that information on behalf of Endicott. 119 Ill. App. 3d 847, 850.

Rathnam and Girmscheid first argue that certain events have rendered this appeal moot. They claim that, after the appellate court's decision, the plaintiff obtained a consent form, signed by Endicott, authorizing the release of all information regarding his treatment while at Zeller. This form is not part of the record but simply

was appended to defendant's brief. Even if it were a part of the record it would not be of benefit to Rathnam and Girmscheid. A matter is moot if an actual controversy no longer exists and the interests or rights of the parties are no longer in controversy. (*In re Marriage of Wright* (1982), 89 Ill. 2d 498, 500.) The waiver form obtained by the plaintiff, even if recognized by the defendants as proper, does not put the controversy here to rest. Section 5 of the Act provides that written consent can be obtained from the recipient of mental-health services to authorize disclosure of the patient's medical records and communications made by him to his therapist in the course of treatment. (Ill. Rev. Stat. 1981, ch. 91½, par. 805.) As section 5(b)(7) provides, however, this written consent can be revoked by the patient at any time. If Endicott would choose to revoke his claimed consent before the depositions were taken here, the issue of waiver would become live again. We agree with the plaintiff that this appeal has not become moot.

Rathnam and Girmscheid contend that they are prohibited by the Act from testifying as to Endicott's medical records, or as to communications had with him in regard to treatment. In support they cite section 3 of the Act, which provides:

"All records and communications shall be confidential and shall not be disclosed except as provided in this Act." (Ill. Rev. Stat. 1981, ch. 91½, par. 803.)

They also cite section 10(a) of the Act, which they claim grants them the right to assert a testimonial privilege on behalf of the recipient Endicott. Section 10(a) provides:

"Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, *** a recipient, *and a therapist on behalf and in the interest of a recipient,* has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communication." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 91½, par. 810(a).)

The purpose of the section is to preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services. (See Ill. Rev. Stat. 1983, ch. 91½, par. 801.) The privilege of confidentiality encourages complete candor between patient and therapist and provides motivation for persons who need treatment to seek it. Under section 10(a), the therapist can assert the privilege in a civil proceeding on behalf of the patient when it is in the patient's interest to do so. Assuming, *arguendo*, that Rathnam and Girmscheid are asserting the privilege "on behalf and in the interest of" Endicott here, we must determine whether the appellate court was correct in reversing the trial court's order compelling them to submit to depositions.

We would first note that there is no section of the Act which expressly allows disclosure, without the patient's consent, of confidential information under the circumstances here. The Act does allow disclosure, however, in criminal proceedings if the patient, when the accused in those proceedings, raises the defense of insanity. (Ill. Rev. Stat. 1981, ch. 91½, par. 810(a)(1).) Indeed, when a defendant raises an insanity defense and calls his own medical expert as a witness to establish the defense, he cannot thereafter assert the privilege to prevent the State, at the same trial, from calling other medical experts who treated him for the same condition. (See *People v. Newbury* (1972), 53 Ill. 2d 228, 234; *People v. Givans* (1967), 83 Ill. App. 2d 423, 429.) The question here is whether Endicott, by calling Rathnam to establish insanity as a defense by revealing confidential information at his criminal trial, waived the therapist-patient privilege for that information for subsequent trials.

The appellate court held, and the defendants now argue, that the disclosure of confidential information at the trial did not waive the right to assert the therapist-pa-

tient privilege in the subsequent wrongful death action here. The defendants attempt to analogize the privilege of confidentiality to the privilege against self-incrimination, which, if waived at one proceeding, is not to be deemed waived for subsequent proceedings. (*People v. Walker* (1963), 28 Ill. 2d 585, 588; *People v. Stufflebeam* (1974), 19 Ill. App. 3d 462.) The comparison fails. The privilege against self-incrimination is a constitutional guarantee, which may be invoked to prevent the State from forcing an admission of criminal liability. This privilege attaches to the person in each case in which the person may be called to testify. An accused who testifies in one proceeding does not waive his right to invoke the self-incrimination privilege in a separate and independent proceeding. McCormick, Evidence sec. 132, at 281 (2d ed. 1972); 8 Wigmore, Evidence sec. 2276(4), at 470-72 (McNaughton rev. ed. 1961).

On the other hand, the privilege between therapist and patient, like the privilege between attorney and client and husband and wife, which prevents compulsory disclosure of confidential communications, may be effectively waived by the holder of the privilege. (See, *e.g.,* *People v. Sanders* (1983), 99 Ill. 2d 262, 272 (husband-wife privilege); *Turner v. Black* (1960), 19 Ill. 2d 296, 309 (attorney-client privilege).) If there is a disclosure of confidential information by the individual for whose benefit the privilege exists, or if he permits such a disclosure, the privilege is waived and cannot be reasserted. Wigmore states:

> "A waiver at a *former trial* should bar a claim of the [physician-patient] privilege at a later trial, for the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only." (Emphasis in original.) (8 Wigmore, Evidence sec. 2389(4), at 860-61 (McNaughton rev. ed.

1961).)

The testimony by Rathnam in favor of Endicott's defense at his trial was a public disclosure by Endicott of information protected by the Act and, as Wigmore puts it, took away its confidentiality.

We would observe, too, that in most jurisdictions when the question has been examined, a waiver of the privilege through one physician is deemed to be a waiver as to another physician who jointly attended or treated the patient for the same condition. (See 3 Wharton, Criminal Evidence sec. 566 (13th ed. 1973); 8 Wigmore, Evidence sec. 2390(3) (McNaughton rev. ed. 1961); see also Annot., 5 A.L.R.3d 1244 (1966).) There is not a legal ground for Rathnam, or Girmscheid, to say now that he is prohibited, under the Act, from testifying as to information that is no longer confidential.

The appellate court here observed, "No court in Illinois has decided the specific issue before this court." (119 Ill. App. 3d 847, 849.) In *People v. Leppert* (1982), 105 Ill. App. 3d 514, though, the appellate court in the second district considered an issue with similarity to the one here. In *Leppert*, a defendant charged with attempted murder called his psychiatrist for the purpose of establishing an insanity defense. The defendant was found not guilty by reason of insanity. In a subsequent commitment hearing before a different jury, he claimed it was improper for the trial court to then allow the State to question his psychiatrist regarding his mental condition over his assertion of the therapist-patient privilege. Rejecting this claim, the court stated:

"The [trial] court ruled that respondent waived this privilege when he had the psychiatrist testify on his behalf at his criminal trial. We agree with the trial court. Respondent had the psychiatrist assist him in his attempt to prove himself insane for the purpose of excusing his responsibility for the act leading to the criminal charge. Re-

spondent elicited the doctor's testimony relating to his insanity in order to gain acquittal. He must acquiesce to the State's use of the same doctor's testimony to prove his present insanity and so obtain a verdict that he should be committed." (105 Ill. App. 3d 514, 519.)

See also *People v. Phillips* (1984), 128 Ill. App. 3d 457, 458-59 (the appellate court in the fifth district rejected the reasoning of the appellate court here).

Most of the jurisdictions that have addressed the question of waiver as to medical information have held that a waiver of the privilege involved in a prior proceeding will be regarded as a waiver of the privilege in a subsequent proceeding. See *Arizona v. Mincey* (1984), 141 Ariz. 425, 439-40, 687 P.2d 1180, 1194 (once the privilege is waived, whether at former trial or otherwise, a patient cannot reassert the privilege); *Hamilton v. Verdow* (1980), 287 Md. 544, 552-53, 414 A.2d 914, 919-20, and cases cited therein; but see *Maryland Casualty v. Maloney* (1915), 119 Ark. 434, 178 S.W. 387; *Burgess v. Sims Drug Co.* (1901), 114 Iowa 275, 86 N.W. 307 (waiver of patient's privilege must be confined to the trial in which it is made); see generally Annot., 79 A.L.R. 173 (1932).

For the reasons given, the judgment of the appellate court is reversed, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*