660 So.2d 887 (1995)
STATE of Louisiana
v.
Dino CINEL.
No. 95-K-1723.
Court of Appeal of Louisiana, Fourth Circuit.
August 18, 1995.
*888 Harry F. Connick, District Attorney of Orleans Parish, Timothy J. McElroy, Assistant District Attorney of Orleans Parish, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, for State of Louisiana.
Arthur A. Lemann, III, New Orleans, and Edwin A. Stoutz, Jr., New Orleans, for Dino Cinel.
Before BARRY and CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
The issue in this writ application is whether a defendant who waives the attorney-client privilege to allow his attorney to testify at a hearing on a motion to quash can reassert that privilege at trial.
The background of this case has been recounted in detail by this Court in State v. Cinel, 619 So.2d 770, 771-75 (La.App. 4th Cir.), writ denied, 629 So.2d 369 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994). Briefly, however, the relevant facts for this dispute are as follows: Cinel was a resident priest assigned at St. Rita's Catholic Church in New Orleans from November 1979 through December 1988. While Cinel was on a trip to Italy in December of 1988, the pastor of St. Rita's, Father Tarantino, entered Cinel's room in the rectory to look for a spare set of keys to Cinel's car. During this search, Father Tarantino discovered a storehouse of various pornographic items, including commercially-produced pornography allegedly depicting juveniles engaged in sexual activity, as well as homemade materials involving Cinel and other men. The next day, Father Tarantino contacted the Archdiocese concerning his discovery; he was advised to box up the materials. The materials subsequently were turned over to the Archdiocese's attorneys, over Cinel's objection. Eventually, these materials made their way into the hands of the District Attorney's office.
On May 21, 1991, Cinel was charged with possession of commercially-made items of child pornography in violation of La.R.S. 14:81.1. He was arraigned on May 28th and pled not guilty. On October 25-26, 1991, the trial court heard various motions, including a motion to quash the bill of information. During the hearing on these motions, Cinel sought to prove that he was being prosecuted in contravention of an agreement that had been reached between the District Attorney's office and his then-counsel, William Campbell. In an effort to prove this agreement, Cinel's present counsel called Campbell to the stand.
After hearing this testimony, the trial court, on January 10, 1992, granted the motion to quash the bill of information; the *889 basis for the motion was the agreement between the District Attorney's office and the defendant's counsel, Campbell, that if Cinel proved that the individuals depicted in his homemade pornographic materials were not juveniles, then Cinel would not be prosecuted. This Court reversed the trial court. State v. Cinel, 619 So.2d 770 (La.App. 4th Cir.), writ denied, 629 So.2d 369 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994).[1]
On January 9, 1995, the State filed amended answers to discovery, indicating its intention to use certain statements made by the defendant at trial. The relevant statement for purposes of this writ application was described as an oral statement made by the defendant
to William Campbell, Esq., as testified to by Mr. Campbell in pre-trial hearings, October 25-26, 1991 after the defendant expressly waived his attorney-client privileges. (See page 69 of transcript of Motion Hearing, October 25,-26, (sic) 1991)
On March 21, 1995, the defendant filed a motion to suppress "any and all" statements made by him after September 1989 "on the ground that such statements were not made freely and voluntarily but rather were made as the direct result of defendant's belief that he had been granted transactional immunity." Of the statements listed in the State's amended discovery answers, only one, a videotaped deposition given by the defendant on August 9, 1990, in connection with a civil lawsuit, fell directly within the scope of the motion to suppress. Nevertheless, on August 4, 1995, the trial court granted the defendant's motion to suppress the communication between the defendant and his former attorney, Campbell. The State now seeks relief from that ruling.
The issue presented by this writ application is whether the defendant made an unlimited waiver of the attorney-client privilege when he permitted his former attorney to testify at the hearing on the motion to quash the bill of information. A review of the transcript confirms that an express waiver of the privilege was made when the defendant's counsel at the hearing stated "Weat this point, Dr. Cinel will waive the attorney-client privilege; Is that correct, Dr. Cinel?", and the defendant answered affirmatively. The waiver occurred because counsel had asked Campbell for what purpose the defendant had retained him. After the waiver, Campbell answered the question as follows:
When he first called me, Dr. Cinel asked me if I could help him recover some property of his that he had at one point in his apartment that was gathered together and removed from there by some member of the church, one of the priest[s] there, and turned over to the church's attorneys. And, the property generally described was adult material, magazines, books, photographs and videos and movies.
Later, during cross-examination, the State asked Campbell why the defendant approached him on January 18, 1989; Campbell again stated that it was for the purpose of getting his material back. The prosecutor specifically asked Campbell if the defendant "admitted that all the materials that were taken from the room were his," to which Campbell replied, "Yeah, I would say so. We didn't go through piece by piece, but he said the material that he had was taken out of his apartment and he wanted it back." It is this answer that is cited by the State in its amended answers to the discovery.
Defense counsel lodged no objection to this question. However, defense counsel attempted to reassert the attorney-client privilege shortly thereafter when the prosecutor asked Campbell for his notes; defense counsel explained that the waiver made earlier was only "in so far as he's testified and in so far as what he's produced." The trial court took the issue under advisement and subsequently held that the privilege had been *890 waived and that the State was entitled to the notes from Campbell's file. The court stated as follows:
The only way a privilege is not waived in this respect is if it's stipulated to ahead of time what it's going to bewhat's the limitation of the privilege. If not, then once the waiver of the attorney-clients [sic] privileges waived, it's waived, and all communications can come in.
In the ruling at issue in the present writ application, the trial court held that the defendant waived the attorney-client privilege for the purposes of the motion hearing only. In other words, the trial court was of the opinion that Cinel's waiver at the motion hearing had been a limited waiver. The trial court also held that under La.C.Cr.P. art. 703, the testimony could not be used at the trial on the merits. Article 703(E)(1) provides that a defendant may testify in support of a motion to suppress "without being subject to examination on other matters." The article also provides that the defendant's testimony cannot be used by the State except for the purpose of impeaching the credibility of the defendant's testimony at trial. See La.C.Cr.P. art. 703(E)(1).
The trial court by analogy extended the right to testify for a limited purpose to the defendant's counsel. Although not mentioned by the defendant or the trial court, the right to give limited testimony is also recognized by La.C.E. art. 410, which provides as follows:
Art. 410. Inadmissibility of pleas, plea discussions, and related statements
A. General rule. Except as otherwise provided in this Article, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
(1) A plea of guilty or of nolo contendere which was later withdrawn or set aside;
(2) In a civil case, a plea of nolo contendere;
(3) Any statement made in the course of any court proceeding concerning either of the foregoing pleas, or any plea discussions with an attorney for or other representative of the prosecuting authority regarding either of the foregoing pleas; or
(4) Any statement made in the course of plea discussions with an attorney for or other representative of the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn or set aside.
B. Exceptions. However, such a statement is admissible:
(1) In any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it; or
(2) In a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.
Subsection (A)(3) of this article appears to be most pertinent in this case. The motion to quash hearing at which defendant's former counsel testified involved an attempt to enforce an agreement whereby in exchange for providing certain evidence, the State would not prosecute the defendant. Although not resulting in a plea, such negotiations for immunity are entirely analogous to a plea bargain. The defendant waived his attorney-client privilege in this case for the purpose of allowing his former attorney to testify regarding the negotiations involving the alleged agreement not to prosecute. Because La. C.E. art. 410 is not on its face limited to defendant's own testimony, it appears more applicable to this case than La.C.Cr.P. art. 703. However, we have been unable to find, nor did the parties cite us to, any jurisprudence that extends La.C.E. art. 410 or its Federal Rules of Evidence counterpart to testimony made by counsel for the defendant.
The State, perhaps anticipating an argument for suppression under La.C.E. art. 410, cites United States v. Suarez, 820 F.2d 1158 (11th Cir.1987), in support of its argument that the defendant's waiver of the privilege at the hearing prohibits a later assertion of privilege to bar his attorney's testimony. In *891 Suarez, the defendant had entered a guilty plea that he subsequently moved to withdraw. An evidentiary hearing was held at which his counsel, who defendant alleged had misled him, testified after defendant expressly waived the attorney-client privilege. After the hearing, the trial court withdrew the defendant's plea on the grounds that he may not have been fully aware of the consequences of that plea. Id. at 1159.
At trial, the government called the defendant's former attorney to testify. The trial court compelled the attorney to testify as to all matters the attorney had testified to at the earlier hearing, finding that the defendant had fully waived the privilege. Id. On appeal, the Fifth Circuit found no error in the trial court's ruling, noting that once there has been a privileged disclosure, there is no justification for retaining the privilege. Id. at 1160. However, in a footnote, the court specifically stated that it was not addressing the issue of whether the defendant could have made a limited waiver for purposes of the evidentiary hearing only, as the record did not indicate that he had done so. Id. at 1160 n. 3.
A distinction between limiting the use of the defendant's own testimony at a motion to suppress hearing and inculpatory statements made in connection with plea bargains but allowing testimony that would otherwise be privileged was addressed in Novak v. Rathnam, 106 Ill.2d 478, 88 Ill.Dec. 608, 610, 478 N.E.2d 1334, 1336 (1985). The issue in Novak was whether the criminal trial testimony from the defendant's psychiatrist, who testified because the defendant had entered a not guilty by reason of insanity plea, could be admitted into a subsequent civil wrongful death action. The physicians argued that the disclosure of confidential information at the criminal trial did not waive the right to assert the doctor-patient privilege at the subsequent proceeding. Id. 88 Ill.Dec. at 610, 478 N.E.2d at 1336. The defendants argued an analogy to the right against self-incrimination, which if waived at one proceeding is not deemed waived at a subsequent pleading. Id. 88 Ill.Dec. at 611, 478 N.E.2d at 1337. In rejecting the analogy, the Illinois court noted that right against self-incrimination is a constitutional guarantee whereas the privilege between doctor and patient, like the privilege between attorney and client, may be effectively waived by the holder of the privilege and once disclosure occurs, to assert the privilege would be "`to seek to preserve a privacy which exists in legal fiction only.'" Id. (quoting 8 Wigmore, Evidence § 2389(4), at 860-61 (McNaughton rev. ed. 1961)).
Additionally, the protections afforded by La.C.E. art. 410 are designed to encourage and protect plea bargain negotiations. The testimony from defendant's counsel pertained to the statements made to him at the time he was retained by the defendant. At that time, January 1989, no criminal prosecution was on the horizon. The evidence was in the hands of the church and Mr. Campbell was retained by the defendant to retrieve the material from the church.
We find that neither La.C.Cr.P. art. 703 nor La.C.E. art. 410 can be extended to find that the defendant has a right to reassert the attorney-client privilege with regard to Campbell's testimony at the motion hearing. This does not, however, necessarily mean that Campbell's testimony is admissible. Rather, the remaining question that we must resolve is whether at the time he waived the privilege the defendant expressly limited it for that one particular hearing. The State argues that the waiver was not expressly limited; it bears the burden of proof on this issue.
At the August 4, 1995, hearing, the trial court held that it did not believe that the defendant had waived his privilege except for the limited purpose of proving the alleged agreement with the District Attorney at the October 1991 hearing. The court stated as follows:
I thought that on the date that we had the motions in regard to both statements, I thought that I ruled on one statement and kept one in abeyance to rule today after your furnished memorandum. And, I think at that time that I said that I was inclined to suppress that communication between Mr. Campbell and Mr. Cinel. Because, I don't believe that Mr. Cinel waived his attorney client privilege except *892 for the purposes of that hearing. And, also, in looking at that, I also looked at the intent embodied in 703 of the Code of Criminal Procedure involving suppression cases.
And in suppression cases, that is limited to that particular issue. And, it is not the defendant does not give up his rights as to any of that information getting into trial except under impeachment situations under 703.
And, in that situation, we were dealing with a suppressa Motion to Suppress Evidence under 703, which would be applicable, and we are also dealing with this issue of a limited privilegeattorney client privilege. I feel that on both the prongson the fact that we were dealing with a Motion to Suppress Evidence under 703 which delineates in paragraph B, I believe, on what happens.
If you want to look at that, but I am pretty sureDid you look at that Mr. Lemann? It limits to that hearing.

On the second prong, I don't believe that he gave up his attorney-client privilege in toto. I think it was limited for that particular motion. So, therefore the statemetn [sic] as to the statement given to Mr. Campbell, the communication between Mr. Campbell and Mr. Cinel, I amI will not let that into evidence under the attorney-client privilege, and also under 703 (emphasis added).
At the time the defendant waived the privilege, his counsel stated "at this point Dr. Cinel will waive the privilege." Testimony was then elicited by both defendant's counsel and the State regarding the admissions made to Campbell by the defendant at the time he retained him. When defendant's counsel attempted to reassert the privilege, he stated that the waiver made earlier was "in so far as he's testified and in so far as what he's produced." In addition, defense counsel made numerous attempts during the hearing to limit the waiver of the privilege, evidencing that the defendant's waiver of the privilege was always intended to be limited in scope.
Thus, the record supports the trial court's conclusion that the defendant's waiver of the attorney-client privilege was intended to be limited to the hearing on the motion to quash. The testimony given by both the attorney and the client was related only to the issues raised by the motion to quash. Further, the testimony elicited indicated that Cinel's waiver was intended to be limited even during the hearing on the motion to quash to his statements to the attorney that he was being retained to recover Cinel's property.
Accordingly, we find no error in the trial court's ruling. In addition to the fact that the record indicates that the waiver of the attorney-client privilege was intended to be limited to the hearing on the motion to quash, the trial court, which presided over the hearing in question, was in the best position to interpret the counsel's statement that the privilege was being waived "at this point." Of course, we recognize that this statement was somewhat vague and was a less than a cogent statement that the waiver of the privilege was intended to be limited; however, the trial court could reasonably have interpreted that way. Thus, the trial court's ruling suppressing Campbell's testimony is affirmed. The State's application for supervisory writs is therefore denied.
NOTES
[1] The trial court subsequently granted a second motion to quash based on the unconstitutionality of the substantive statute under which the defendant had been charged. The Louisiana Supreme Court reversed, holding that the offending portion of the statute could be severed and the constitutional infraction thus cured. State v. Cinel, 94-0942 (La. 11/30/94), 646 So.2d 309. Thereafter, a ruling on a motion to recuse the district attorney resulted in a State writ and the reversal of the trial court's ruling. State v. Cinel, 95-0637 (La.App.4th Cir. 4/4/95), writ denied, 95-1087 (La. 6/16/95), 655 So.2d 336.