JOHN H. STROGER, JR., President of the Cook County Board of Commissioners, *et al.*, Plaintiffs-Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY *et al.*, Defendants-Appellees. ·

First District (6th Division)  No. 1—00—2545

Opinion filed August 24, 2001.

Quinlan & Crisham, Ltd., of Chicago (William R. Quinlan, John F. Kennedy, James A. Niewiara, and Lisa M. Hegedus, of counsel), for appellants.

Mayer, Brown & Platt, of Chicago (Hugh R. McCombs, Julian C. D'Esposito, and Jeffrey W. Sarles, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, John H. Stroger, president of the Cook County Board of Commissioners, and Bernard Scavella, a registered voter residing in Calumet City, Cook County, Illinois, brought this action for declarative and injunctive relief against the Regional Transportation Authority (RTA), the Commuter Rail Division of the RTA (Metra), and the Suburban Bus Division of the RTA (PACE) (collectively, defendants), alleging that certain provisions of the statute empowering defendants, the Regional Transportation Authority Act (the RTA Act) (70 ILCS 3615/ 1.01 *et seq.* (West 1998)), violate certain principles of the Illinois Constitution. The trial court denied plaintiffs' motion for preliminary injunction and granted defendants' motion to dismiss.

On appeal, plaintiffs contend that the appointment provisions of the RTA Act: (1) violate the "one-person, one-vote" guarantee embodied in article I, section 2, and article III, section 3, of the Illinois Constitution; (2) violate the separation of powers required by article II, section 1, of the Illinois Constitution by stripping the constitutionally created chief executive of Cook County of inherent executive powers of appointment; and (3) violate article VII, section 6(f), of the Illinois Constitution by changing the form of Cook County government without referendum. For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings.

BACKGROUND

The following facts are relevant to this appeal. Plaintiff, John H. Stroger (Stroger), is president of the Cook County Board of Commissioners. Pursuant to article VII, section 4(b), of the Illinois Constitution:

"The President of the Cook County Board shall be elected from the County at large and shall be the chief executive officer of the County. If authorized by county ordinance, a person seeking election as President of the Cook County Board may also seek election as a member of the Board." Ill. Const. 1970, art. VII, § 4(b).

Plaintiff Bernard Scavella (Scavella) is a registered voter who resides in the fourth district of Cook County, outside the City of Chicago. On February 29, 2000, plaintiffs filed a three-count complaint for declaratory and injunctive relief against defendants challenging the appointment provisions of the RTA Act as unconstitutional.

By way of background, the RTA Act was enacted in 1973 and became effective in 1974 after approval by the voters in a six-county

referendum. The referendum was upheld as constitutionally valid in *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 121, 317 N.E.2d 534, 536 (1974). The RTA Act is now codified at section 1.01 *et seq.* (70 ILCS 3615/1.01 *et seq.* (West 1998)).

The stated purpose of the RTA Act is as follows:

> "[T]o provide for, aid and assist public transportation in the northeastern area of the State without impairing the overall quality of existing public transportation by providing for the creation of a single authority responsive to the people and elected officials of the area and with the power and competence to provide financial review of the providers of public transportation in the metropolitan region and facilitate public transportation provided by Service Boards which is attractive and economical to users, comprehensive, coordinated among its various elements, economical, safe, efficient and coordinated with area and State plans." 70 ILCS 3615/1.02(c) (West 1998).

Originally, the RTA Act allocated the responsibility for appointments to the RTA board among three sub-areas in the six-county region, Chicago, suburban Cook County, and the five collar counties. The corporate authorities and governing body of the RTA is a board of directors consisting of 13 directors.

The appointment procedures for the RTA board of directors are delineated in section 3.01 of the RTA Act:

> "(a) Four Directors appointed by the Mayor of the City of Chicago, with the advice and consent of the City Council of the City of Chicago, and a fifth director who shall be the Chairman of the Chicago Transit Authority. Each such Director shall reside in the City of Chicago except the Chairman of the Chicago Transit Authority who shall reside within the metropolitan area as defined in the Metropolitan Transit Authority Act [(70 ILCS 3605/1 *et seq.* (West 1998)).]
>
> (b) Four Directors appointed by the members of the Cook County Board elected from that part of Cook County outside of Chicago, or, in the event such Board of Commissioners becomes elected from single member districts, by those Commissioners elected from districts, a majority of the electors of which reside outside Chicago. In either case, such appointment shall be with the concurrence of four such Commissioners. Each such Director shall reside in that part of Cook County outside Chicago.
>
> (c) Two Directors appointed by the Chairmen of the county boards of Kane, Lake, McHenry and Will Counties, with the concurrence of not less than a majority of the Chairmen from such counties, from nominees by the Chairmen. Each such Chairman may nominate not more than 2 persons for each position. Each such Director shall reside in a county in the metropolitan region other than Cook or Du Page Counties.

(d) One Director shall be appointed by the Chairman of the Board of Du Page County with the advice and consent of the County Board of Du Page County and shall reside in Du Page County.

(e) Before January 1, 1987, for the term expiring July 1, 1989, the Chairman shall be appointed by the Governor. Thereafter the Chairman shall be appointed by the other 12 Directors with the concurrence of three-fourths of such Directors. The chairman shall not be appointed from among the other Directors. The chairman shall be a resident of the metropolitan region." 70 ILCS 3615/3.01 (West 1998).

Section 3.01(h) of the RTA Act expressly requires that the foregoing appointments be made on a "one man, one vote" basis. 70 ILCS 3615/3.01(h) (West 1998).

In 1983, the Act was substantially amended to provide additional state financial aid to transportation in the region and to create Metra and Pace, separate entities responsible for commuter rail and suburban bus service, respectively. 70 ILCS 3615/3A.01, 3B.01 (West 1998). The governing body of the Commuter Rail Division is a board of directors consisting of seven directors, including three directors appointed as follows:

"Three directors appointed by the members of the Cook County Board elected from that part of Cook County outside of Chicago, or, in the event such Board of Commissioners becomes elected from single member districts, by those Commissioners elected from districts, a majority of the residents of which reside outside Chicago. In either case, such appointment shall be with the concurrence of four such Commissioners. Each such director shall reside in that part of Cook County outside Chicago." 70 ILCS 3615/ 3B.02(c) (West 1998).

Three of the other directors are appointed by the chairmen of the boards of the collar counties, and the final director is appointed by the mayor of Chicago.

The General Assembly similarly established an appointment process for the Metra and Pace boards to reflect a continuing concern with ensuring political balance among the separate regions of metropolitan Chicago. The governing body of Pace is a board of 12 directors, 6 of which are appointed as follows:

"(a) Six directors appointed by the members of the Cook County Board elected from that part of Cook County outside of Chicago, or in the event such Board of Commissioners becomes elected from single member districts, by those Commissioners elected from districts, a majority of the residents of which reside outside of Chicago from the chief executive officers of the municipalities, of

that portion of Cook County outside of Chicago." 70 ILCS 3615/3A.02(a) (West 1998).

The remaining directors are appointed by the chairmen of the county boards for the collar counties. 70 ILCS 3615/3A.02(b) through (f) (West 1998).

The board appointment scheme set forth above is illustrated as follows:

| Board | Total Directors | By Mayor of Chicago | By Suburban Commissioners | By Du Page County Chairman | By Collar County Chairmen |
|-------|-----------------|---------------------|---------------------------|----------------------------|---------------------------|
| RTA | 13 | 5 | 4 | 1 | 2 |
| Metra | 7 | 1 | 3 | 1 | 2 |
| Pace | 12 | | 6 | 1 | 4 |

In their three-count complaint, plaintiffs alleged that the appointment provisions of the RTA Act violate several provisions of the Illinois Constitution. In count I, plaintiffs alleged that the appointment provisions of the Act violated the separation of powers provisions of article II, section 1, of the Illinois Constitution. Plaintiffs argued that the appointment provisions unconstitutionally vested the legislative arm of Cook County, the Cook County Board of Commissioners, with appointment authority, thereby stripping the president of the Cook County Board of Commissioners of his inherent executive appointment powers. In count II, plaintiffs alleged that the RTA Act constituted a change in the county form of government without referendum in violation of article II, section 6(f), as it created a separate board within the Cook County Board of Commissioners, vested with powers different from the Cook County Board of Commissioners.

In count III, plaintiffs alleged that the appointment provisions of the RTA Act are violative of the "one-person, one-vote" guarantee of article I, section 2, and article III, section 3, of the Illinois Constitution. Plaintiffs argue that certain voters, like plaintiff Scavella, who reside outside the City of Chicago but in districts where the majority of residents reside within the City of Chicago, have no voice or representation in the appointment of members to the RTA boards. Plaintiffs alleged that although Scavella has the right to vote for a commissioner to represent him on the board of commissioners, the commissioner for the fourth district (Stroger) does not have any voice in the appointment of directors to any of the RTA boards.

Plaintiffs also filed a motion seeking to preliminarily enjoin the RTA from making any further appointments under the RTA Act based on its alleged constitutional defects.

Defendants filed a motion to dismiss plaintiffs' complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS

5/2—615 (West 1998)) for failure to state a cause of action. Defendants argued that the appointments provisions are constitutional.

The trial court granted leave to the Illinois Attorney General to intervene in the case and to file a motion to dismiss plaintiffs' complaint pursuant to section 2—619.1 of the Code of Civil Procedure. 735 ILCS 5/2—619.1 (West 1998). The motion of the Attorney General incorporated defendants' section 2—615 motion and raised the additional argument that plaintiffs' claims were barred by *laches* because the RTA Act had never been challenged on the grounds raised in plaintiffs' complaint since the enactment of the Act. In addition, the trial court granted leave for the Amalgamated Transit Union, Locals 241 and 308, to file a statement as *amicus curiae* in support of the plaintiffs' motion for temporary and preliminary injunctive relief and in opposition to defendants' motion to dismiss. In making its decision, the trial court reviewed the motions and briefs of all parties, including the interveners.

On July 12, 2000, following arguments, the trial court denied plaintiffs' motion for preliminary injunction and granted RTA's motion to dismiss. The trial court found that the " 'one-man, one-vote' doctrine does not apply to instances where the body in question is appointed," and therefore plaintiffs failed to state a valid constitutional claim:

> "It is clear, however, that the only reasonable meaning of this provision is 'one man-one vote' as required by law. Since there is no requirement that the mathematical exactitude triggered by the 'one man-one vote" principle be applied when a body is appointed, the means of appointing the constituent Board of Directors passes constitutional muster as well as the requirements of the RTA Act itself. Indeed, Plaintiffs do not suggest in their briefs that in establishing the RTA, the legislature had to give every voter the same weight as every other voter regardless of geographical location. They argue, for example, that President Stroger should be given the right to appoint all the Cook County members of the Board of Directors. Nowhere do they claim that Chicago residents should be given equal weight to suburban and collar county residents. The entire scheme of the RTA Act which was to create a practicable geographical balance in order to efficiently meet the transportation needs of the residents of the Northeastern Illinois region militates against the type of exactitude that Plaintiffs postulate."

The trial court further rejected plaintiffs' separation of powers argument, observing that "the legislature may enact any legislation not expressly prohibited by the constitution," and noting that "courts have consistently upheld the authority of legislative bodies to establish the mode and method of appointment" to legislatively created of-

fices. The trial court found that the appointment procedures do not constitute "usurpation" of the authority of the Cook County board president but, rather, serve independent governmental entities not subject to the authority of the Cook County board president.

Finally, the trial court rejected plaintiffs' contention that the appointment procedures of the RTA Act change the form of Cook County's government without a referendum. The court explained that "the RTA Act created a special district," and therefore did not "alter the form of government of Cook County." The trial court noted that the RTA Act was approved by the voters by referendum.

Plaintiffs' timely appeal followed.

OPINION

On appeal, plaintiffs initially contend that the trial court erred by concluding that the "one-person, one-vote" guarantee embodied in article I, section 2, and article III, section 3, of the Illinois Constitution does not apply to appointed bodies, such as the RTA boards. Plaintiffs argue that the RTA Act explicitly provides that the RTA board of directors shall be appointed on the "one-person, one-vote" basis.

●1 A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424, 712 N.E.2d 330, 333 (1999); *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742 N.E.2d 858 (2000). In ruling on a section 2—615 motion to dismiss, this court must accept as true all well-pleaded facts in the complaint as well as all reasonable inferences that can be drawn therefrom. *Sherman v. Kraft General Foods, Inc.*, 272 Ill. App. 3d 833, 835, 651 N.E.2d 708, 710 (1995). Therefore, in reviewing the trial court's ruling on defendant's section 2—615 motions to dismiss, we apply the *de novo* standard of review. *Board of Directors*, 186 Ill. 2d at 424, 712 N.E.2d at 333.

●2 The RTA Act contains the following provision:
> "The Board of Directors shall be so appointed as to represent the City of Chicago, that part of Cook County outside the City of Chicago, and that part of the metropolitan region outside Cook County on the one man one vote basis." 70 ILCS 3615/3.01(h) (West 1998).

●3 The constitutional principle of "one person, one vote" derives from two provisions of the Illinois Constitution: (1) article I, section 2, which provides that "[n]o person shall be *** denied the equal protection of the laws," and (2) article III, section 3, which provides that "[a]ll elections shall be free and equal." Ill. Const. 1970, art. I, § 2; art. III, § 3.

In count III of their complaint, plaintiffs allege:

"The RTA exercises general governmental powers concerning budgetary and administrative decisions regarding the Illinois transit system as a whole. Such broad and general powers conferred on the RTA state an intent that its actions and decisions have a primary and far-reaching effect on the public transportation system in the State of Illinois."

Plaintiffs argue that the RTA Act is unconstitutional because it results in unequal voting strength among the voters who reside in the 17 districts which comprise the districts of the Cook County Board of Commissioners for purposes of appointing directors to the RTA boards created under the RTA Act:

"The RTA establishes a scheme where directors of the various boards are appointed by the Chairmen of the county boards of Du Page, Kane, Lake, McHenry and Will Counties. In contrast, the directors representing Cook County are appointed by members of the Cook County Board elected from districts of which a majority of the electors reside *outside* the City of Chicago. Specifically, only Commissioners representing districts 5, 6, 13, 14, 15, 16 and 17 may vote. Commissioners representing districts 1, 2, 3, 4, 7, 8, 9, 10, 11 and 12 do not have a vote in the appointment of directors of the various boards."[1]

Plaintiffs complain that the RTA Act deprives citizens, such as plaintiff Scavella, of equal voting power, as well as disenfranchising Scavella and over 226,000 similarly situated voters who reside outside the City of Chicago, but in districts of Cook County where the majority of residents reside within the City of Chicago, who elect a commissioner to represent them, yet who have no voice in the appointment of directors to the RTA boards.

Plaintiffs rely on *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed 2d 506, 84 S. Ct. 1362 (1964). There, the United States Supreme Court held that each voter is entitled to have his or her vote given equal weight to that of every other voter. Plaintiffs argue that the "one person, one vote" doctrine is applicable in elections of governmental bodies or units that exercise general governmental powers (*Avery v. Midland County*, 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114 (1968)), and has been applied to elections at the local level. *Hadley v. Junior College District*, 397 U.S. 50, 25 L. Ed. 2d 45, 90 S. Ct. 791 (1970); *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886 (1969). Defendants reply that the "one-person, one-vote" doctrine does not apply when governmental officers are appointed: " 'The members of the Agency's governing board are appointed; consequently, the fact that they do not "represent" equal numbers of

---

[1]See map.

people does not deny those who are "underrepresented" equal protection of the laws.' [Citation.]" *Eastern v. Canty*, 75 Ill. 2d 566, 583, 389 N.E. 2d 1160 (1979). Defendants also note that *Hadley*, upon which plaintiffs rely, held that the equal representation principle does not apply "where a State chooses to select members of an official body by appointment rather than election." *Hadley*, 397 U.S. at 58, 25 L. Ed. 2d at 52, 90 S. Ct. at 796.

However, in *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 566 N.E.2d 1283 (1990), our supreme court invalidated the Chicago School Reform Act (School Reform Act) (Ill. Rev. Stat. 1989, ch. 122, par. 34—1.01 *et seq.*) as violative of the one person, one vote doctrine. The School Reform Act established a three-step system for selection of members of the board of education: local school councils, subdistrict councils, and the school board nominating commission. Under the School Reform Act, parents with students attending a Chicago public school could vote for more members of each local school council than residents without children in public schools. In addition, residents of certain districts had no voting rights at all. The court held the School Reform Act unconstitutional because the subdistrict councils and the nominating commission were comprised of and selected by members of "an unconstitutionally elected body, the local school council." *Fumarolo*, 142 Ill. 2d at 99. Because the members of the local school councils were unconstitutionally elected, the appointments to the school board that resulted from those unconstitutional elections were defective.

Defendants respond that *Fumarolo* is distinguishable, in that plaintiffs have not alleged that the election of those individuals making appointments, *i.e.*, the mayor of the City of Chicago, the Cook County commissioners, and the collar county chairmen, are constitutionally defective. Defendants argue that the RTA Act is designed to reflect proportional representation of the city and the suburbs on its board, and that as Cook County chairman, Stroger's voting constituency is derived from both the city and the Cook County suburbs. However, there are 170,000 more registered voters in the city than in the suburbs; thus, a larger majority of Stroger's votes are derived from the city. The mayor of Chicago has five appointments to the RTA board. Defendants argue that if Stroger was able to make another four appointments to the board, the city could completely dominate the RTA board, contrary to the intent of the legislation. Defendants further note that as Stroger happens to be Scavella's commissioner, the effect would be the same. In addition, persons who are similarly situated to Scavella reside in districts where the majority of the voters are from the city. Therefore, defendants argue, the voice of these voters is

proportionally represented by the appointments made by the mayor of Chicago. The trial court found that the only "reasonable meaning of [the one man, one vote] provision is 'one man, one vote' as required by law."

●4 Notwithstanding defendants' above analysis, the law here, *i.e.*, the RTA Act, specifically directs the appointment of board members according to the principle of one man, one vote. The undisputed allegations of plaintiffs' complaint reveal that the directors are not appointed on the basis of one man, one vote. Plaintiffs' complaint further alleges that the appointment scheme unconstitutionally creates an additional unit of local government in violation of *Fumarolo*. In light of traditional statutory construction, which ascribes meaning to all provisions of a statute (see, *e.g.*, *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990) ("[a] statute should be construed so that no word or phrase is rendered superfluous or meaningless")), we find the trial court's analysis insufficient to dispose of plaintiff's action on a motion to dismiss for failure to state a cause of action. It is not clear that plaintiffs' complaint failed to set forth any grounds that would entitle them to relief. During the oral arguments, plaintiffs' counsel argued that the appointment scheme has become inequitable since 1994 when the system for election of county board members changed.[2] This issue was not addressed in the record on appeal and perhaps merits discussion in the lower court. In light of these unresolved issues, we find that dismissal pursuant to section 2—615 was premature and that hearings on the allegations raised in plaintiffs' complaint are necessary to explore the validity of plaintiffs' claims. For these reasons, we reverse the judgment of the trial court, vacate its order, and remand this matter for further proceedings consistent with this opinion. Under the circumstances of our disposition of this mater, we need not address the constitutional issues raised on appeal. See, *e.g.*, *East St. Louis Federation of Teachers Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 408, 687 N.E.2d 1050, 1056-57 (1997) (court need not rule on constitutional issues unless addressing them is necessary to the disposition of a case).

Judgment vacated; case remanded.

BUCKLEY and GALLAGHER, JJ., concur.

---

[2] We take judicial notice of the fact that in 1994, the Cook County board created a "redistricting map" which changed its own system of the election of its 17 commissioners from an at-large election scheme to a representation system based on single-member districts.