Docket No. 92473–Agenda 12–May 2002.

JOHN H. STROGER, JR., 
et al.
, Appellees, v. THE REGIONAL TRANSPORTATION AUTHORITY 
et al.
, Appellants.

Opinion filed September 19, 2002.

JUSTICE GARMAN delivered the opinion of the court:

In February 2000, plaintiffs, John H. Stroger, Jr., and Bernard Scavella, filed a complaint in the circuit court of Cook County for declaratory and injunctive relief against defendants, the Regional Transportation Authority (RTA), the commuter rail division of the RTA (METRA), and the suburban bus division of the RTA (PACE). The complaint alleged that the statutory procedures contained in the Regional Transportation Authority Act (Act) (70 ILCS 3615/1.01 
et seq.
 (West 1998)) for appointment of the board of directors of RTA, METRA, and PACE violate the Illinois Constitution of 1970. Plaintiffs also filed a motion for preliminary injunction prohibiting defendants from making any further appointments to the boards of directors under the provisions of the Act. Defendants filed a motion to dismiss the complaint pursuant to section 2–615 of the Code of Civil Procedure (Code) (735 ILCS 5/2–615 (West 1998)), alleging failure to state a claim as a matter of law. The Attorney General was granted leave by the circuit court to intervene for the purpose of defending the constitutionality of the Act. The Attorney General filed a motion to dismiss the complaint pursuant to section 2–619.1 of the Code (735 ILCS 5/2–619.1 (West 1998)), incorporating the allegations of defendants’ section 2–615 motion and, in addition, alleging that plaintiffs’ complaint was barred by 
laches
 because the Act had never been challenged on the grounds raised in the complaint. After briefing and argument on the motions, the circuit court denied plaintiffs’ motion for preliminary injunction and dismissed their complaint on the basis that they had failed to state a cause of action upon which relief could be granted. The appellate court reversed the dismissal of the complaint and remanded for further proceedings. 324 Ill. App. 3d 970. We granted defendants’ petition for leave to appeal. 177 Ill. 2d R. 315.

BACKGROUND

In 1973, the General Assembly enacted the Act, creating the RTA for the counties of Cook, Du Page, Kane, Lake, McHenry, and Will. The Act’s purpose was to “provide for, aid and assist public transportation in the northeastern area of the State *** by providing for the creation of a single authority responsive to the people and elected officials of the area and with the power and competence to provide and facilitate public transportation ***.” Ill. Rev. Stat., 1973 Supp., ch. 111⅔, par. 701.02(b). The Act provided for a board of directors for the RTA (RTA board), comprised of nine directors. Four directors were to be appointed by the mayor of Chicago, two directors were to be appointed by members of the Cook County board elected from that part of Cook County outside of Chicago, and two directors were to be appointed by the chairmen of the county boards of the counties in the metropolitan region outside Cook County. The chairman of the RTA board was to be chosen by the other eight directors. Ill. Rev. Stat., 1973 Supp., ch. 111⅔, pars. 703.01(a) through (d). The Act required that the voters in the metropolitan region to be served by the RTA approve its establishment in a special referendum election. Ill. Rev. Stat., 1973 Supp., ch. 111⅔, par. 701.05. In 
Hoogasian v. Regional Transportation Authority
, 58 Ill. 2d 117 (1974), this court upheld the validity of the referendum that was conducted in March 1974 and upheld the constitutionality of the Act against certain challenges.

In 1983, the General Assembly amended the Act in response to “[s]ubstantial, recurring deficits in the operations of public transportation services subject to the jurisdiction of the Regional Transportation Authority and periodic cash shortages” that had occurred and which could bring about a loss of public transportation services throughout the metropolitan region. 70 ILCS 3615/1.02(b)(i) (West 1998). The amendment provided for additional state financial assistance and created METRA (70 ILCS 3615/3B.01 (West 1998)) and PACE (70 ILCS 3615/3A.01 (West 1998)) and established boards of directors for these new entities. The amendment also changed the composition of and selection process for the RTA board. Currently, there are 13 directors of the RTA board, chosen as follows:

“(a) Four Directors appointed by the Mayor of the City of Chicago, with the advice and consent of the City Council of the City of Chicago, and a fifth director who shall be the Chairman of the Chicago Transit Authority. Each such Director shall reside in the City of Chicago except the Chairman of the Chicago Transit Authority may live outside the City of Chicago.

(b) Four Directors appointed by the members of the Cook County Board elected from that part of Cook County outside of Chicago, or, in the event such Board of Commissioners becomes elected from single member districts, by those Commissioners elected from districts, a majority of the electors of which reside outside Chicago. In either case, such appointment shall be with the concurrence of four such Commissioners. Each such Director shall reside in that part of Cook County outside Chicago.

(c) Two Directors appointed by the Chairmen of the county boards of Kane, Lake, McHenry and Will Counties, with the concurrence of not less than a majority of the Chairmen from such counties, from nominees by the Chairmen. Each such Chairman may nominate not more than 2 persons for each position. Each such Director shall reside in a county in the metropolitan region other than Cook or DuPage Counties.

(d) One Director shall be appointed by the Chairman of the Board of DuPage County with the advice and consent of the County Board of DuPage County and shall reside in DuPage County.” 70 ILCS 3615/3.01(a) through (d) (West 1998).

Section 3.01(h) (70 ILCS 3615/3.01(h) (West 1998)) of the Act provides in relevant part:

“(h) The Board of Directors shall be so appointed as to represent the City of Chicago, that part of Cook County outside the City of Chicago, and that part of the metropolitan region outside Cook County on the one man one vote basis. After each Federal decennial census the General Assembly shall review the composition of the Board and, if a change is needed to comply with this requirement, shall provide for the necessary revision by July 1 of the third year after such census.”

The METRA board has seven directors. The appointments are made by the mayor of Chicago (one appointment), suburban Cook County commissioners from suburban-majority districts (three appointments), Du Page County chairman (one appointment), and chairmen of the other collar county boards (two appointments). 70 ILCS 3615/3B.02 (West 1998). The PACE board has 12 directors. Appointment authority is allocated to the suburban Cook County commissioners from suburban-majority districts (six appointments) and to each of the chairmen of the collar county boards (five appointments). Each PACE board member must be a chief executive officer of a municipality within one of six regions specified by the statute. The chairman of the PACE board is chosen by a majority of the chairmen of the collar county boards and members of the Cook County board elected from suburban-majority districts. 70 ILCS 3615/3A.02 (West 1998).

Plaintiff Stroger is president of the Cook County board of commissioners and represents the fourth district of Cook County. Plaintiff Scavella is a registered voter residing in Calumet City in the fourth district. In count I of their complaint, plaintiffs alleged that, because the Act removes the power to appoint directors from the Cook County board’s chief executive officer and places it in the legislative members of that board, the appointment provisions of the Act relating to Cook County violate the separation of powers doctrine contained in article II, section 1, of the constitution (Ill. Const. 1970, art. II, §1). In count II of the complaint, plaintiffs alleged that the transfer of appointment power from the Cook County board president to certain legislative members of that board constituted an unconstitutional change in the form of Cook County government without a referendum, in violation of article VII, section 6(f), of the constitution (Ill. Const. 1970, art. VII, §6(f)). Count III of the complaint alleged that the appointment provisions of the Act violate the “one person, one vote” guarantee of the constitution (Ill. Const. 1970, art. I, §2; art. III, §3), because commissioners elected from Cook County districts where the majority of residents reside inside Chicago (which is the case in the fourth district) are precluded from voting to appoint directors to the RTA board. Thus, according to plaintiffs, only Cook County board members from districts 5, 6, 13, 14, 15, 16, and 17 may vote for directors of the RTA board. Plaintiffs alleged that this effectively disenfranchised Scavella and approximately 226,000 other voters, giving them no voice in the appointment of directors to the RTA board.

 The circuit court granted defendants’ motion to dismiss. T
he appellate court did not address plaintiffs’ constitutional arguments, instead finding that the circuit court’s dismissal of the complaint was premature. The court noted that section 3.01(h) of the Act specifically requires that appointments be made on the one person, one vote basis and that plaintiffs had alleged in their complaint that the directors are not in fact so appointed. The court found it unclear whether plaintiffs had failed to state a cause of action. The court noted that, at oral argument, plaintiffs’ counsel had argued that the appointment scheme had become “inequitable” since 1994 when Cook County board members began to be elected from single-member districts. The court noted that this issue was not addressed in the circuit court and “perhaps merits discussion.” Therefore, the appellate court remanded the cause to the circuit court for a hearing on the allegations of plaintiffs’ complaint. 324 Ill. App. 3d at 979.

ANALYSIS

I. Standard of Review

When the legal sufficiency of a complaint is challenged by a section 2–615 motion to dismiss, all well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490 (1996). The question to be determined is whether sufficient facts are contained in the pleadings which, if established, may entitle the plaintiff to relief. 
Urbaitis v. Commonwealth Edison
, 143 Ill. 2d 458, 475 (1991). The appropriate standard of review is 
de novo
. 
Neade v. Portes
, 193 Ill. 2d 433, 439 (2000).

II. Constitutional Principle of “One Person, One Vote”

Despite the appellate court’s failure to address their constitutional arguments, the parties argue, and we agree, that the record is sufficient to permit this court to determine the constitutionality of the challenged provisions of the Act.

“Legislation challenged in this court benefits from a presumption of constitutionality. [Citation.] Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test. [Citation.] Under this test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. [Citation.]

Where challenged legislation implicates a fundamental constitutional right, however, such as the right to vote, the presumption of constitutionality is lessened and a far more demanding scrutiny is required. [Citation.] When the means used by a legislature to achieve a legislative goal impinge upon a fundamental right, the court will examine the statute under the strict scrutiny standard. [Citation.] Under a standard of strict scrutiny, the court must conclude that the means employed by the legislature to achieve a stated goal were necessary to advance a compelling state interest. [Citation.] In addition, the statute must be narrowly tailored, that is, the legislature must use the least restrictive means consistent with the attainment of the legislative goal. [Citations.]” 
Tully v. Edgar
, 171 Ill. 2d 297, 304-05 (1996).

We review 
de novo
 a circuit court’s decision regarding the constitutionality of a statute. 
People v. Jung
, 192 Ill. 2d 1, 4 (2000).

The constitutional principle of “one person, one vote” derives from two articles of the Illinois Constitution of 1970. Article I, section 2, provides that “[n]o person shall be *** denied the equal protection of the laws.” Ill. Const. 1970, art. I, §2. Article III, section 3, states that “[a]ll elections shall be free and equal.” Ill. Const. 1970, art. III, §3. As this court has stated:

“The principle of the one-man, one-vote doctrine, as exemplified by 
Reynolds v. Sims
 (1964), 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, and the decisions stemming from it, is that when a public office must be filled by election, whether because of a constitutional mandate or a legislative enactment, the method used shall be reasonably designed to achieve the objective that the ‘vote of any citizen is approximately equal in weight to that of any other citizen in the State.’ (377 U.S. 533, 579, 12 L. Ed. 2d 506, 537, 84 S. Ct. 1362, 1390.) From this it follows that when the determinative vote is to be cast by electoral districts these must be ‘as nearly of equal population as is practicable.’ 377 U.S. 533, 577, 12 L. Ed. 2d 506, 536, 84 S. Ct. 1362, 1390.” 
Eastern v. Canty
, 75 Ill. 2d 566, 577-78 (1979).

Defendants argue that the one person, one vote principle applies only to elected officials. They rely on 
Eastern
, in which this court rejected an argument that the one person, one vote principle applied to a sanitary district board whose directors were appointed, noting that the United States Supreme Court had never held that appointed offices must be selected on the one person, one vote principle. Rather, the Supreme Court had recognized the constitutionality of filling offices by appointment, rather than election, in such decisions as 
Sailors v. Board of Education
, 387 U.S. 105, 18 L. Ed. 2d 650, 87 S. Ct. 1549 (1967), and 
Fortson v. Morris
, 385 U.S. 231, 17 L. Ed. 2d 330, 87 S. Ct. 446 (1966). 
Eastern
, 75 Ill. 2d at 578. Accordingly, this court concluded that no constitutional requirement exists that an appointed governing body of a district be so constituted that a majority of its members represent the more populous regions comprising the district. 
Eastern
, 75 Ill. 2d at 585.

In 
Sailors
, Michigan electors challenged the method of selecting members of the county school board. Voters elected members of the local school boards, but the county school board was chosen by delegates from the local school boards. Each local board received one vote in the selection of the county board, regardless of population or wealth. Plaintiffs argued that this method of selection violated the principle of one person, one vote. 
Sailors
, 387 U.S. at 106-07, 18 L. Ed. 2d at 652, 87 S. Ct. at 1551. The Supreme Court concluded that no constitutional reason existed why state or local officers of a nonlegislative character may not be chosen by appointment, rather than through election. The court noted that while the Michigan county school boards performed important functions, they were primarily administrative in nature and, therefore, were not legislative in the “classical sense.” 
Sailors
, 387 U.S. at 108-10, 18 L. Ed. 2d at 653-54, 87 S. Ct. at 1552-53.

 In 
Fortson
, the Supreme Court rejected an equal protection challenge to a provision of the Georgia constitution providing that if no gubernatorial candidate received a majority of votes at a general election, the Georgia legislature was to select the governor by majority vote from the two candidates receiving the highest number of popular votes. The court noted that the method chosen by Georgia had been employed both before and since the Revolutionary War. 
Fortson
, 385 U.S. at 233-34, 17 L. Ed. 2d at 332-33, 87 S. Ct. at 448.

Plaintiffs argue that this court applied the one person, one vote principle to an appointed body in 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54 (1990). In that case, the plaintiffs challenged the constitutionality of the Chicago School Reform Act, which decentralized the Chicago school system by creating local school councils that were responsible for each grammar school and high school. Each council was comprised of the principal of the school and 10 elected members. The elected members were to consist of: (1) six parents of children currently enrolled at the school; (2) two community residents residing within the school’s attendance center; and (3) two teachers employed at the school served by the council. Each local school council elected one member to sit on a subdistrict council. The statute set forth voter eligibility requirements for participation in local school council elections. Only parents of students enrolled at the school served by the local school council could vote for the parent members of the council; only school staff could vote for the teacher members; and only community residents residing within the school’s attendance center could vote for the community members of the local school council. However, with respect to community residents to be elected to the local school council of a multiarea school, the statute provided that only the parents of students enrolled at that multiarea school, the principal and the school staff could vote for the community residents to be elected to the local school council for that multiarea school. Accordingly, community residents who lived in a multiarea attendance center and who did not have children enrolled at the school could not vote for any local school council members. In addition, community residents in single district attendance centers could vote for only two members of the local school council, while parents with children enrolled in the school could vote for six members. 
Fumarolo
, 142 Ill. 2d at 71-72.

The plaintiffs in 
Fumarolo
 advanced an equal protection argument, asserting that the statute’s voter eligibility requirements violated the one person, one vote principle. We concluded that the local school councils were essential units of educational governance, making important decisions regarding the Chicago school system. 
Fumarolo
, 142 Ill. 2d at 81. Thus, the statute’s voter eligibility provisions must satisfy the strict scrutiny test, 
i.e
., they must be necessary to advance a compelling state interest and must be narrowly tailored to achieve that end. We determined that the restrictions on voting for local school council members were not necessary to effect its purpose and were not the least restrictive means of attaining the state’s goal. 
Fumarolo
, 142 Ill. 2d at 90-94.

The plaintiffs further argued in 
Fumarolo
 that because the local school council voting scheme violated the equal protection clause, the method of selecting the board of education was also unconstitutional. Under the statute, the mayor of Chicago appointed members of the board of education, after receiving recommendations from a nominating commission. The nominating commission was comprised of five mayoral appointees and one member from each of the 11 subdistrict councils. Among the defendants’ arguments was that the nominating commission need not be selected on the basis of one person, one vote because it was an appointed body and not an elected body. 
Fumarolo
, 142 Ill. 2d at 94-95. This court distinguished its 
Eastern
 decision and the decision of the Supreme Court in 
Sailors
, noting that, in both those cases, there was no question that the members of the bodies responsible for making the appointments were constitutionally selected. However, the subdistrict councils and the nominating commission were comprised of and selected by the local school councils, which were unconstitutionally elected bodies. Thus, the members of the nominating commission who were selected by members of the subdistrict councils were not properly selected. 
Fumarolo
, 142 Ill. 2d at 99.

Plaintiffs attempt to apply 
Fumarolo
 to the instant case by arguing that the commissioners who make appointments to the RTA board constitute a distinct appointing body and, like the local school councils in 
Fumarolo
, those commissioners must be elected on the one person, one vote basis. While plaintiffs do not dispute that each member of the Cook County board of commissioners is constitutionally elected by the voters of his or her district, they argue that it is not the Cook County board of commissioners that appoints the RTA directors but, rather, a subgroup of seven commissioners who have the authority to make appointments on behalf of all suburban Cook County voters, including plaintiff Scavella. Plaintiffs argue that the RTA board exercises broad and general governmental powers throughout its jurisdiction, making important budgetary and administrative decisions that affect the entire region served by the RTA. Thus, they reason, it must be appointed by a body that is itself constitutionally elected.

We reject plaintiffs’ contention that the Act creates an additional unit of government in the seven commissioners empowered to make appointments to the RTA board. 
Fumarolo
 does not support this argument. In that case, the statute specifically created three separate entities–local school councils, subdistrict councils, and the nominating commission. Only members of the local school councils were to be elected by voters. In contrast, the Act does not create a separate body within the Cook County board of commissioners. It provides for appointment of RTA board of directors based upon the proportional population of the region to be served by the RTA. It is true that not all commissioners participate in the appointment of directors to the RTA board. However, they do not, simply due to that fact, constitute a separate, recognizable entity under the Act that must be elected on the one person, one vote basis. Plaintiffs have cited no persuasive authority in support of their argument. Each of the members of the Cook County board of commissioners is, as plaintiffs have conceded, constitutionally elected. Thus, the appointment provisions of the Act do not abridge plaintiffs’ fundamental constitutional right to vote.

Because the appointment provisions here neither affect a fundamental right nor involve a suspect classification, the appropriate standard for our review of plaintiffs’ constitutional challenge is the rational basis test. Under this test,“[a] legislative classification must be upheld if any set of facts can reasonably be conceived which justify distinguishing the class to which the statute applies from the class to which the law is inapplicable.” 
Miller
, 196 Ill. 2d at 59. Whether the course chosen by the legislature to achieve a desired result is wise or is the best means available is not a proper subject of judicial inquiry. 
Garcia v. Tully
, 72 Ill. 2d 1, 10 (1978).

Prior to enactment of the Act, public transportation in northeastern Illinois was in a shambles. Receipts from fares were inadequate to sustain services. The Chicago Transit Authority announced that it would have to either raise fares or cut services. The suburban bus companies were about to cease business because of inadequate funds to meet payrolls and pay for fuel. The commuter railroads had requested substantial fare increases from the Illinois Commerce Commission. There was a consensus that something had to be done. While agreement existed that the agency to be responsible for transportation should cover the six-county area of northeastern Illinois, other issues remained. As one commentator phrased it:

“Besides financing, other differences of opinion centered on the structure, powers and control of the proposed agency. Would it be an operations type of agency or would it be an ‘arm’s length’ unit of government which would provide funding but not the operations staff to be involved in day-to-day operations? Would it represent truly regional interests and do so from a consumer-oriented perspective? What kind of powers would be delegated by the legislature? Would it be a strong agency or a weak agency? How would the City of Chicago, suburban Cook and the five outlying counties be represented on the Board of Directors? What types of checks and balances could be utilized to maintain control of the Board in a balance reflecting the diverse political, ethnic, social and economic interests found in the six-county region?” J. Tecson, 
The RTA in Northeastern Illinois, Part I
, Chi. B. Rec. 318, 334 (May-June 1975). 

The composition of and selection process for the RTA board was the General Assembly’s response to the need to balance the varying interests of the diverse region to be served by the RTA. We cannot say that the appointment provisions of the Act are not rationally related to the legitimate state interest of providing safe, efficient, and affordable public transportation in the northeastern region of Illinois. While it is true that the Cook County board of commissioner elected by Scavella does not have the power to appoint any directors to the RTA board, the interests of Scavella and the 226,000 others identified by him are nonetheless served by those directors on the RTA board who are appointed by other commissioners, a majority of whose constituents reside in suburban Cook County. Accordingly, we conclude that the appointment provisions of the Act satisfy the rational basis test and we reject plaintiffs’ constitutional argument.

III. Statutory “One Person, One Vote” Provision

Plaintiffs argue that, even if the constitutional principle of one person, one vote does not apply to appointments to the RTA board, the statute itself requires that those appointments be made on a one person, one vote basis. Plaintiffs refer us to section 3.01(h) of the Act, quoted above.

The primary rule of statutory construction is to give effect to the intent of the legislature. 
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997). The best evidence of legislative intent is the language used in the statute itself and that language must be given its plain and ordinary meaning. 
Paris
, 179 Ill. 2d at 177. The statute should be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous. 
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 270 (1998). Where the meaning of a statute is unclear from a reading of its language, courts may look beyond the language of the statute and consider the purpose of the law, the evils it was intended to remedy, and the legislative history behind it. 
In re B.C.
, 176 Ill. 2d 536, 542-43 (1997).

Plaintiffs argue that the plain meaning of this statutory provision is that the appointments to the RTA board are to be made on the one person, one vote basis. Otherwise, according to plaintiffs, the provision would have no meaning. Defendants contend that the plain meaning of this provision requires the General Assembly to determine after each federal decennial census whether the board appointment process needs to be adjusted to account for population shifts within the region to be served by the RTA.

The one person, one vote provision of the Act has existed since the Act’s inception in 1973 (Ill. Rev. Stat., 1973 Supp., ch. 111⅔, par. 703.01(g)). In addition, the Act has always contemplated that Cook County may adopt single member districts, stating that, in the event this occurs, the directors of the RTA board allocated to that part of Cook County outside of Chicago shall be appointed by those commissioners elected from districts, a majority of the electors of which reside outside Chicago. Ill. Rev. Stat., 1973 Supp., ch. 111⅔, par. 703.01(b). We disagree with plaintiffs’ contention that, unless the one person, one vote provision is applied as they urge, it would have no meaning. The area served by the RTA consists of three core constituencies: Chicago, the Cook County suburbs, and the collar counties. The appointment scheme for the RTA board reflects the proportional population of those regions. Thus, Chicago has five appointments, the Cook County suburbs have four, and the collar counties have three. Section 3.01(h) simply directs the General Assembly to review the appointment provisions after each federal decennial census to ensure that the representation on the RTA board for each of the RTA’s three regions remains proportional to the population of those regions. The statute does not require that the RTA board itself be appointed on the one person, one vote basis.

IV. Separation of Powers

Plaintiffs contended in their complaint that the appointment provisions of the Act violate the separation of powers doctrine found in article II, section 1, of the Illinois Constitution. That section provides that the legislative, executive, and judicial branches of government are separate and that no branch shall exercise powers properly belonging to another. Ill. Const. 1970, art. II, §1. The basis for plaintiffs’ argument is that the Act deprives the president of the Cook County board of his “inherent appointment authority.”

Article VII, section 4(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, §4(a)) provides for the election by each county of a chief executive officer, who shall have the duties and powers provided by law and by county ordinance. Pursuant to article VII, section 4(b), the president of the Cook County board shall be elected from the county at large and shall be the chief executive officer of the county. Ill. Const. 1970, art. VII, §4(b).

Plaintiffs argue that the office of Cook County board president is similar to the office of Governor and that, therefore, the powers of the two offices are equivalent. However, plaintiffs overlook the fact that article V, section 9, of the Illinois Constitution (Ill. Const. 1970, art. V, §9(a)) specifically grants to the Governor the power to “nominate and *** appoint all officers whose election or appointment is not otherwise provided for.” The constitution contains no provision setting forth the powers of the president of the Cook County board. Plaintiffs also argue that the president of the Cook County board has inherent, executive authority to appoint members of the RTA board. They contend that this authority derives from the fact that the president is a constitutional officer. However, the precedent they cite does not support their argument. At issue in 
Dunne v. County of Cook
, 164 Ill. App. 3d 929, 936 (1987), were ordinances in which Cook County commissioners gave themselves the right to hire and fire members of their personal staffs. A statute gave the board president power to appoint all officers and employees of Cook County except those whose election or appointment was otherwise provided for by law. The circuit court held these ordinances an unconstitutional attempt to change the form of county government without a referendum in violation of the home rule provision of the Illinois Constitution. The appellate court affirmed, noting that appointment of the employees in question was not governed by any law and, thus, the appointment power belonged to the president of the board.

People ex rel. Hanrahan v. Beck
, 54 Ill. 2d 561 (1973), involved a challenge to the authority of the Cook County board to transfer certain functions from the county clerk to the newly created office of county comptroller. The plaintiff argued that the county clerk was a constitutionally created office and, as such, was protected from elimination. This court held the transfer lawful, noting that the duties sought to be transferred were not derived from common law or constitutionally delegated to the office of county clerk. 
Beck
, 54 Ill. 2d at 566-67. 
People ex rel. Hansen v. Phelan
, 255 Ill. App. 3d 113 (1993), also cited by plaintiffs, is not precedential because this court vacated the circuit and appellate court judgments in that case (
People ex rel. Hansen v. Phelan
, 158 Ill. 2d 445 (1994)).

It is well settled that the method of appointment, other than of constitutional officers, is a matter solely within the discretion of the legislative branch. 
Betts v. Village of Calumet Park
, 20 Ill. 2d 524, 526 (1960). “[T]he power to appoint to office is not inherent in the executive department unless conferred by the constitution or the legislature[.] *** [T]he creation of officers, the delegation and regulation of the powers and duties of officers and the prescribing of the manner of their appointment or election are legislative functions, which are restrained only by the Constitution.” 
People ex rel. Gullett v. McCullough
, 254 Ill. 9, 16 (1912). Thus, this court has upheld statutes providing for appointment authority in persons other than a chief executive. See, 
e.g.
, 
Betts
, 20 Ill. 2d 524 (statute providing for appointment of village officers by village board of trustees upheld against separation of powers challenge); 
People v. Chicago Transit Authority
, 392 Ill. 77 (1945) (statute requiring approval by mayor of Chicago of gubernatorial appointments to legislatively created transit authority upheld against separation of powers challenge); 
People ex rel. Dunham v. Morgan
, 90 Ill. 558 (1878) (separation of powers challenge rejected where statute provided for appointments to board of park commissioners by circuit judge).

As stated, our constitution does not confer on the president of the Cook County board any specific powers. Thus, the Act does not deprive the president of any inherent appointment powers to the RTA board. We hold that the appointment provisions of the Act do not violate the constitutional principle of separation of powers.

V. Change of Cook County Government Without Referendum

Plaintiffs argue that the Act’s appointment provisions violate the provisions of article VII, section 6(f), of the Illinois Constitution. Article VII sets forth the powers of home rule units. Section 6(f) states that a home rule unit may, subject to approval by referendum, adopt, alter, or repeal a form of government provided by law. Plaintiffs contend that the Act “effectively removes the power to appoint RTA board members from the chief executive and transfers that power to a subgroup of the legislative arm of the Board of Commissioners.” However, as we have already held, the president of the Cook County board has no inherent power to appoint directors of the RTA board. The legislature was within its authority to establish the RTA and provide for its governance.

We further note that article VII, section 6(f), provides that a 
home rule unit
 has the power to adopt, alter, or repeal a form of government. This language, which is clear on its face, applies only to actions taken by home rule units, not to acts of the General Assembly. Plaintiffs point to no authority holding to the contrary. We therefore conclude that the appointment provisions of the Act do not contravene article VII, section 6(f), of the constitution.

CONCLUSION

For the reasons stated, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE RARICK took no part in the consideration or decision of this case.