THIRD DIVISION
December 2, 2009

No. 1-08-2861

| | | |
|---|---|---|
| HEATHER JOHNSTON, WILLIAM JOHNSTON and JANE JOHNSTON, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| ANDREW WEIL, SEAN McCANN, DOROTHY B. JOHNSON, MARTA COBLITZ, BURTON HOCHBERT, KAREN PINKERT-LIEB, ANDREA MUCHIN, DEBRA DiMAGGIO and LESLIE FINEBERG, | ) ) ) ) ) ) | Honorable |
| Defendants-Appellants. | ) ) | Ronald S. Davis, Judge Presiding. |

JUSTICE QUINN delivered the opinion of the court:

Plaintiffs filed a complaint against defendants alleging, *inter alia*, that defendants[1] violated the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2006)) by disseminating, or causing to be disseminated, information obtained by a professional witness who was appointed by the circuit court pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/604(b) (West 2006)). The circuit court denied defendants' motion to dismiss plaintiffs'

---

[1] Plaintiffs and defendant Andrew Weil settled out of court and this court granted the parties' agreed motion to dismiss Weil's appeal on May 27, 2009.

1-08-2861

complaint and defendants filed a motion to reconsider or, in the alternative, to certify for appeal the issue of whether the evaluations, communications, reports, and information obtained pursuant to section 604(b) of the Marriage Act are confidential where the professional witness employed by the court is a psychiatrist or mental health care provider. On October 2, 2008, the circuit court, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), certified the following question for interlocutory appeal:

> "Whether evaluations, communications, reports and information obtained pursuant to section 750 ILCS 5/604(b) of the Illinois Marriage and Dissolution of Marriage [Act] are confidential under the Mental Health and Developmental Disabilities Confidentiality Act 740 ILCS 110/1 *et seq.* where the 604(b) professional personnel [*sic*] to advise the court is a psychiatrist or other mental health professional."

This court granted defendants' application for leave to appeal on November 26, 2008.

On appeal, defendants argue that the evaluations, communications, reports and information obtained pursuant to section 604(b) of the Marriage Act are not confidential under the Confidentiality Act where the section 604(b) expert witness is a court witness whose findings are necessarily disclosed to the court and parties. Defendants also maintain that no confidential relationship exists between a section 604(b) expert witness and the participants involved in the court-ordered evaluation. Plaintiffs argue that a section 604(b) expert is a mental health provider who provides mental health services to participants within the meaning of the Confidentiality Act. For the following reasons, we agree with defendants and answer the certified question in the negative.

## I. BACKGROUND

Plaintiff Heather Johnston was married to defendant Sean McCann and the parties had a son together prior to defendant McCann filing a petition for dissolution of marriage on May 22, 1998 (McCann divorce). McCann was represented by defendants Debra DiMaggio and Leslie Fineberg during divorce proceedings. Defendant Marta Coblitz was the appointed child's representative in those proceedings.

Plaintiff subsequently married defendant Andrew Weil and the parties had a daughter together prior to defendant Weil filing a petition for dissolution of marriage on January 24, 2002 (Weil divorce). Weil was represented by defendants Burton Hochberg, Karen Pinkert-Lieb and Andrew Muchin during divorce proceedings. Defendant Dorothy Johnson (attorney Johnson) was the appointed child's representative in those proceedings.

Following the McCann divorce, McCann filed a petition to modify provisions of the joint parenting agreement with plaintiff Johnston. As a result of that petition, on January 27, 2006, the circuit court entered an order stating that "Dr. Phyllis Amabile [a psychiatrist] shall conduct a 604[(b)] evaluation of the family" and "Both Parties *** shall fully cooperate with Dr. Amabile in conducting her evaluation, including without limit submitting to any testing or evaluations administered by Dr. Amabile or her agents or by third parties recommended by Dr. Amabile." Pursuant to the circuit court's order, plaintiff Johnston and her parents, plaintiffs William Johnston and Jane Johnston, participated in Dr. Amabile's evaluation. Dr. Amabile advised each of the plaintiffs that the information she obtained in the interviews would be disclosed to the court, all parties and their attorneys. Dr. Amabile completed her evaluation and sent a report to

1-08-2861

the circuit court pursuant to section 604(b) of the Marriage Act. The record does not show that plaintiffs sought a protective order regarding the information provided to Dr. Amabile or her report.

Contemporaneous with the McCann postdecree proceedings, former defendant Weil filed a motion for temporary possession and an emergency motion seeking leave to subpoena Dr. Amabile. After receiving notice of Weil's motion, on December 6, 2006, attorney Johnson, as the court-appointed child representative in the Weil divorce, contacted Dr. Amabile in an effort to determine whether Dr. Amabile's section 604(b) evaluation had any relevance to the minor child in the Weil divorce matter. In an affidavit, attorney Johnson stated that Dr. Amabile advised her of three issues that she evaluated, but did not provide any information regarding her communications with plaintiffs or any opinions or conclusions she formed as a result of the section 604(b) evaluation. Plaintiff Johnston filed a response objecting to Weil's motion and asserting that Dr. Amabile's report was privileged under the Confidentiality Act. On December 19, 2006, the circuit court presiding in the Weil divorce matter issued a written order finding that Dr. Amabile's section 604(b) report in the McCann divorce matter was subject to the Confidentiality Act and not discoverable in the Weil divorce matter.

On January 30, 2007, plaintiffs filed their complaint against defendants alleging, in counts I and II, that plaintiffs' communications with Dr. Amabile, information she obtained from them, and her resulting evaluation/report were confidential and had been disseminated by defendants in violation of the Confidentiality Act. Plaintiffs alleged that because the section 604(b) professional in this case was a psychiatrist, any information she obtained and her resulting report were

-4-

1-08-2861

confidential.

Defendants filed motions to dismiss plaintiffs' complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619) (West 2006)), arguing that the evaluation and report of the section 604(b) professional was neither privileged nor confidential under the Confidentiality Act. Defendants also denied possessing, distributing, disclosing or redisclosing the records and communications at issue.

Plaintiffs' counsel was absent from the initial hearing on the motions to dismiss and the circuit court granted defendants' motions and dismissed counts I and II of plaintiffs' complaint pursuant to section 2-615 of the Code. The circuit court subsequently granted the motion to vacate the dismissal order filed by plaintiffs' counsel on the grounds that counsel had been hospitalized on the date of the initial hearing. No new pleadings were filed. Following oral arguments, the circuit court issued an order on April 18, 2008, denying defendants' motion to dismiss counts I and II of the complaint.

On May 16, 2008, defendants filed a motion requesting that the circuit court reconsider its April 18, 2008, order or, in the alternative, certify the question of law at issue in this case. With the agreement of the parties, the circuit court certified the question of law at issue in this case and stayed the proceedings below pending this court's resolution of the certified question.

## II. ANALYSIS

We review a question of law certified by the circuit court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) *de novo*. Thompson v. Gordon, 221 Ill. 2d 414, 426 (2006).

The issue raised by the certified question of law is whether a section 604(b) court-

1-08-2861

appointed expert psychiatrist or other mental health professional who is providing an evaluation

falls under the Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2006)).  The fundamental rule

of statutory construction is to give effect to the intention of the legislature.  Exelon Corp. v.

Department of Revenue, 234 Ill. 2d 266, 274-75 (2009).  The most reliable indicator of the

legislature's intent is the language of the statute, which must be given its plain and ordinary

meaning.  Taylor v. Pekin Insurance Co., 231 Ill. 2d 390, 395 (2008).  Where the statutory

language is clear and unambiguous, the court must give effect to the language without resort to

other tools of interpretation.  In construing a statute, it is never proper for a court to depart from

plain language by reading into the statute exceptions, limitations, or conditions that conflict with

the clearly expressed legislative intent.  Exelon Corp., No. 105582, slip op. at 6.

Section 604(b) of the Marriage Act provides:

"The court may seek the advice of professional personnel, whether or not

employed by the court on a regular basis.  The advice given shall be in writing and made

available by the court to counsel.  Counsel may examine, as a witness, any professional

personnel consulted by the court, designated as a court's witness."  750 ILCS 5/604(b)

(West 2006).

Therefore, section 604(b) provides a mechanism for court appointment of an independent

evaluator on custody and visitation issues.  The purpose of the statute is to make the information

available to assist the circuit court and the expert witness is appointed to protect the interests of

minor children regarding issues of custody and visitation.  See In re Marriage of Petersen, 319 Ill.

App. 3d 325, 334 (2001) (circuit court designated a section 604(b) expert witness for the ultimate

1-08-2861

benefit of the minor children with respect to issues of custody and visitation and court had inherent plenary powers to enter orders necessary for the benefit of the minor children, including requiring a party to pay for the section 604(b) expert witness).

Consequently, under the terms of section 604(b), the expert is the court's witness and it is the duty of the court-appointed evaluator to conduct an independent investigation and provide the court and each party with her findings. In addition, any party may call the evaluator to testify at trial. See 750 ILCS 5/604(b) (West 2006) ("Counsel may examine, as a witness, any professional personnel consulted by the court, designated as a court's witness"). The statute provides no limitations or exceptions when the court-appointed evaluator is a psychiatrist or other mental health professional and this court must not depart from the plain language by reading such an exception into section 604(b). See Exelon Corp., 234 Ill. 2d at 275.

Plaintiffs, nonetheless, assert that where a section 604(b) evaluator is a psychiatrist, the Confidentiality Act applies because a psychiatrist is a mental health provider rendering mental health services within the meaning of the Confidentiality Act. As such, plaintiffs maintain that a confidential relationship existed between plaintiffs and Dr. Amabile.

The relevant sections of the Confidentiality Act provide, in pertinent part, as follows:

> " 'Confidential communication' or 'communication' means any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. Communication includes information which indicates that a person is a recipient.

\* \* \*

'Mental health or developmental disabilities services' or 'services' includes but is

not limited to examination, diagnosis, evaluation, treatment, training,

pharmaceuticals, aftercare, habilitation or rehabilitation.

\* \* \*

'Recipient' means a person who is receiving or has received mental health or

developmental disabilities services." 740 ILCS 110/2 (West 2006).

Plaintiffs argue that because Dr. Amabile "examined" and "evaluated" them, plaintiffs were

"recipients" of mental health services under the Confidentiality Act. We disagree.

"Because the [Confidentiality] Act's goal is to ensure the confidentiality of therapeutic

relationships, it includes only 'those persons entering into a therapeutic relationship with

clients.' " Quigg v. Walgreen Co., 388 Ill. App. 3d 696, 702 (2009), quoting Martino v. Family

Service Agency, 112 Ill. App. 3d 593, 599-600 (1982). Dr. Amabile was acting as an

independent, court-appointed evaluator rather than a therapist assisting patients. For a therapist,

the client is the patient. In contrast, for a child custody professional, the client is the court. The

goal of a therapist is to assist the patient in effectively treating a mental health issue. The goal of

a child custody professional, on the other hand, "is to assist the trier of fact in acquiring and

understanding psycholegal information relevant to the pending legal dispute." D. Royce-Baerger,

R. Galatzer-Levi, J. Gould & S. Nye, *A Methodology for Reviewing the Reliability and*

*Relevance of Child Custody Evaluations*, 18 J. Am. Acad. Matrim. Law. 35, 38-39 (2002). Since

the court-appointed professional evaluates custody issues, the position taken by the section 604(b)

professional may be adverse to one of the witnesses who participates in the evaluation. This is contrary to the goal of mental health services that are provided in the context of a therapeutic relationship between a therapist and patient.

Here, Dr. Amabile was not retained to act on behalf of plaintiffs and her only basis for contact with plaintiffs was to report findings to the circuit court. Information divulged by plaintiffs to the evaluator was necessary to Dr. Amabile's evaluation for the court, and plaintiffs were aware from the outset that the evaluator would relate her findings and conclusions to the circuit court and parties involved. We therefore find that plaintiffs' participation in the evaluation performed by the court-appointed section 604(b) evaluator did not constitute a therapeutic relationship. See Quigg, 388 Ill. App. 3d at 703 (where pharmacy was not engaged in a therapeutic relationship with the pharmacy's customer, it was not subject to liability under the Confidentiality Act after it disclosed the customer's prescription to her husband during divorce and custody proceedings).

In addition, the Confidentiality Act specifically exempts records and communications made to or by a therapist in the course of examination ordered by the circuit court when the individual examined was informed that such records and communications would not be considered confidential. See 740 ILCS 110/10(a)(4) (West 2006); People v. Summers, 353 Ill. App. 3d 367, 376 (2004) (defendant's evaluation and treatment following his conviction for aggravated sexual abuse were not privileged under the Confidentiality Act where the evaluation and treatment were pursuant to court order). Section 10(a) of the Confidentiality Act provides, in relevant part:

"Records and communications made to or by a therapist in the course of

1-08-2861

examination ordered by the court for good cause shown may, if otherwise relevant and admissible, be disclosed in a civil, criminal, or administrative proceeding in which the recipient is a party or in appropriate pretrial proceedings, provided such court has found that the recipient has been as adequately and as effectively as possible informed before submitting to such examination that such records and communications would not be considered confidential or privileged." 740 ILCS 110/10(a)(4) (West 2006).

Here, there was no dispute that Dr. Amabile informed plaintiffs that their communications were not confidential and that her findings would be presented to the circuit court, the parties and their attorneys, pursuant to the court's order. Accordingly, the communications to Dr. Amabile, as a court-appointed section 604(b) witness, could not be deemed confidential under the Confidentiality Act.

Moreover, our supreme court has recognized that four conditions are necessary for the establishment of a privilege against the disclosure of communications:

" '(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct

-10-

1-08-2861

disposal of litigation.' " (Emphasis in original.) <u>In re October 1985 Grand Jury No. 746</u>, 124 Ill. 2d 466, 475 (1988), quoting 8 J. Wigmore, Evidence §2285, at 527 (rev. ed. 1961).

Here, plaintiffs are unable to establish even the first condition to assert a privilege. The parties do not dispute that Dr. Amabile informed plaintiffs that their conversations and the information obtained would be shared with the court, the parties and their attorneys. Thus, plaintiffs cannot establish that the communications "originat[ed] in a *confidence* that they [would] not be disclosed" to establish a privilege against the disclosure of the communications at issue.

Plaintiffs, nonetheless, rely on <u>Norskog v. Pfiel</u>, 197 Ill. 2d 60 (2001), in support of their argument that the communications and information obtained by Dr. Amabile, as a section 604(b) expert witness, are confidential. However, we find plaintiffs' reliance on this case unavailing.

In <u>Norskog</u>, the parents and a patient, who received mental health services as a minor, appealed from contempt citations issued by the circuit court for failing to comply with discovery orders directing them to identify the mental health services providers seen by the patient and to disclose information regarding the patient's diagnosis and treatment. <u>Norskog</u>, 197 Ill. 2d at 62-63. Our supreme court held that the circuit court erred when it held the parties in contempt because the information was privileged under the Confidentiality Act and no exception allowed for its disclosure in that case. <u>Norskog</u>, 197 Ill. 2d at 86-87.

Specifically, our supreme court determined, in <u>Norskog</u>, that the patient's participation in a court-ordered fitness examination in prior criminal proceedings arising from the murder he committed when he was a minor did not result in waiver of his privilege under section 10(a)(4) of

the Confidentiality Act (740 ILCS 110/10(a)(4) (West 2000)) against disclosure of his mental health information in the subsequent civil wrongful death action arising from the same murder. Norskog, 197 Ill. 2d at 76-78. Our supreme court noted that there are strict rules governing the use of information revealed to an examiner in a fitness exam. Under section 104-14(a) of the Code of Criminal Procedure of 1963 (Criminal Code) (725 ILCS 5/104-14(a) (West 2000)), such information "shall not be admissible against the defendant unless he raises the defense of insanity ***, in which case they shall be admissible only on the issue of whether he was insane." Subsection (b) of section 104-14 of the Criminal Code provided that any further use of statements made in the course of a fitness examination, beyond what is allowed in subsection (a), must be with the defendant's informed written consent. Norskog, 197 Ill. 2d at 77. Our supreme court explained that the examining psychiatrist admonished the patient prior to the examination that any information the patient provided may be contained in reports submitted to the court but did not mention anything about the disclosure of information in any subsequent civil proceedings. Norskog, 197 Ill. 2d at 77. Our supreme court therefore determined that by participating in the court-ordered fitness examination, the patient agreed to waive his confidentiality privilege only to the extent provided by the strict procedural rules contained in the Criminal Code. Norskog, 197 Ill. 2d at 78. Our supreme court concluded that the patient was not notified, under section 10(a)(4) of the Confidentiality Act, "as adequately and as effectively as possible *** that such records and communications would not be considered confidential or privileged." (740 ILCS 110/10(a)(4) (West 2000)). Consequently the admonishments given to the patient at the fitness examination were insufficient to allow disclosure of the patient's mental health information in the

1-08-2861

civil proceedings. Norskog, 197 Ill. 2d at 78.

In Norskog, our supreme court also rejected the plaintiff's argument that the patient waived the confidentiality privilege in the civil proceedings where the patient placed his mental health at issue by raising an insanity defense in the prior criminal trial. Our supreme court explained that the defense of insanity was never raised because the patient never went to trial, but, instead, entered a plea of guilty. Norskog, 197 Ill. 2d at 75. In addition, no psychiatrist or mental health therapist ever made a public disclosure of the patient's mental health records or testified in open court regarding the mental health treatment that the patient had received. Norskog, 197 Ill. 2d at 76.

Unlike Norskog, where our supreme court found that records and communications concerning the mental health treatment that a patient received were subject to the Confidentiality Act and considered whether any exception to the privilege applied, here, plaintiffs were not patients receiving mental health treatment under the Confidentiality Act. Rather, as previously explained, plaintiffs participated in an evaluation performed by a court-appointed section 604(b) evaluator. There was no therapeutic relationship involved in the present case. Further, unlike Norskog, in this case, there was no dispute that Dr. Amabile informed plaintiffs that their communications were not confidential and that her findings would be presented to the circuit court, the parties and their attorneys, pursuant to the court's order. Therefore, the communications to Dr. Amabile are not privileged where plaintiffs were informed "as adequately and as effectively as possible *** that such records and communications would not be considered confidential or privileged." 740 ILCS 110/10(a)(4) (West 2006).

-13-

1-08-2861

Plaintiffs lastly argue that reports issued by a psychiatrist include psychological testing results for parents and children, educational information regarding children, collateral mental health and physical health information and comments from collateral family members that are "simply not meant for public consumption, but lack of candor regarding those topics can severely impact the ultimate course of action the court takes, to the detriment of the children the court seeks to protect." However, there is no allegation that any of the communications at issue were ever disclosed for "public consumption." Rather, the parties involved in one of plaintiff Johnson's divorce proceedings made an inquiry into the relevance of the 604(b) expert's report ordered in another of plaintiff Johnson's divorce proceedings.

Further, we note that section 13.4(a)(i)(h) of the Rules of the Circuit Court of Cook County, which was recently amended, provides that the circuit court "may" issue a protective order with respect to a section 604(b) expert's report. Section 13.4(a)(i)(h) provides:

> "At the time of the appointment of an evaluation pursuant to 750 ILCS 5/604, the court may issue a protective order prohibiting the parties or their attorneys from disseminating the contents of said report for purposes other than the litigation or to the minor children or to anyone who is not a party to the litigation." Cook Co. Cir. Ct. R.13.4(a)(i)(h) (eff. April 1, 2009).

While this provision was recently enacted, the circuit court's rule addresses plaintiffs' public policy concern that if the Confidentiality Act does not apply, the reports from a section 604(b) expert would routinely be disseminated to the public.

We recognize that significant public and private interests are served by preserving the

-14-

1-08-2861

confidentiality of information pertaining to child custody and visitation issues. Accordingly, while we find that plaintiffs may not invoke the protections of the Confidentiality Act to maintain a cause of action with respect to the evaluations, communications, reports and information obtained pursuant to section 604(b) of Marriage Act, we note that other causes of action may be available to preserve the privacy and confidentiality of the communications at issue particularly when a protective order is involved. See, *e.g.*, Bagent v. Blessing Care Corp., 224 Ill. 2d 154 (2007) (patient filed a complaint against hospital and its employee, who revealed patient's pregnancy results to patient's sister at a public tavern, alleging, *inter alia*, invasion of privacy and negligent infliction of emotional distress); Cordts v. Chicago Tribune Co., 369 Ill. App. 3d 601 (2006) (employee brought invasion of privacy and defamation claims against his employer and a company hired by the employer to evaluate his disability claim, alleging that the company wrongfully disclosed to plaintiff's ex-wife that he was receiving treatment for depression after learning of the fact while evaluating his disability claim). However, we have no cause to consider whether alternative remedies may be available to plaintiffs under the narrow question presented in this case pursuant to Supreme Court Rule 308. See Brookbank v. Olson, 389 Ill. App. 3d 683, 685 (2009) (this court's review is generally limited to the question certified by the trial court).

### III. CONCLUSION

For the above reasons, we find that plaintiffs may not invoke the protections of the Confidentiality Act with respect to communications made by plaintiffs to the section 604(b) court-appointed psychiatrist in the course of the custody and visitation evaluation. Accordingly, we answer the certified question in the negative.

-15-

Certified question answered.

STEELE, and COLEMAN, JJ., concur.