Docket No. 109693.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

HEATHER JOHNSTON *et al.*, Appellants, v. ANDREW WEIL *et al.*, Appellees.

*Opinion filed February 25, 2011.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Chief Justice Kilbride dissented, with opinion.

Justice Theis took no part in the decision.

## OPINION

The circuit court of Cook County certified the following question of law for interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)):

> "Whether evaluations, communications, reports and information obtained pursuant to section *** 604(b) of the Illinois Marriage and Dissolution of Marriage [Act] [citation] are confidential under the Mental Health and Developmental Disabilities Confidentiality Act [citation] where the 604(b) professional personnel to advise the court is a psychiatrist or other mental health professional."

The appellate court answered this question in the negative. 396 Ill.

App. 3d 781. We allowed leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). For the following reasons, we likewise answer the certified question in the negative, and remand the cause to the circuit court for further proceedings.

## I. BACKGROUND

Heather Johnston was married to Sean McCann and, in 1998, they had a son. Their marriage was dissolved. Johnston subsequently married Andrew Weil and, in 2002, they had a daughter. In June 2005, their marriage was dissolved. In each dissolution proceeding, McCann and Weil were represented by several attorneys, and an attorney was appointed as the child's representative.

McCann filed a postdissolution petition to modify the joint parenting agreement with Johnston. In January 2006, the circuit court entered an order appointing Dr. Phyllis Amabile, a psychiatrist, to conduct an independent evaluation and assist the court in determining custody of the McCann son, pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/604(b) (West 2006)). Pursuant to the order, Johnston, her parents, McCann and Weil, among others, participated in the evaluation. The order required them to fully cooperate with Dr. Amabile in conducting her evaluation, including their submission to any tests administered by Dr. Amabile, her agents, or her recommended third parties. Dr. Amabile advised each of the parties that the information obtained through the evaluation would be disclosed to the court, all parties, and their attorneys. Dr. Amabile completed her evaluation and sent a report to the circuit court. The record does not show that Johnston or her parents sought a protective order regarding either the information they provided to Dr. Amabile or her report.

Contemporaneous with the McCann postdissolution proceedings, Weil filed a motion seeking temporary possession or custody of his daughter, and seeking leave to subpoena Dr. Amabile. In response, Johnston asserted that Dr. Amabile's report was privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2006)). In December 2006, the circuit court in the Weil postdissolution proceeding found that Dr. Amabile's section 604(b) report in the

-2-

McCann proceeding was privileged under the Confidentiality Act and not discoverable in the Weil proceeding.

In January 2007, plaintiffs, Johnston and her parents, filed the instant complaint, which named as defendants McCann, McCann's attorneys, the McCann child representative, Weil, Weil's attorneys, and the Weil child representative. The complaint alleged that Dr. Amabile was a therapist within the meaning of the Confidentiality Act; Dr. Amabile engaged in confidential communications with plaintiffs; and the information she obtained and included in her 604(b) report in the McCann proceeding was privileged under the Confidentiality Act. Further, the complaint alleged, "upon information and belief," essentially that the McCann defendants "individually and/or jointly" disclosed the confidential information to the Weil defendants "individually and/or jointly." The complaint sought $200,000 in damages for each plaintiff in addition to costs and attorney fees.

McCann, the McCann attorneys and child representative, Weil, and the Weil attorneys filed motions to dismiss pursuant to section 2–619.1 of the Code of Civil Procedure (735 ILCS 5/2–619.1 (West 2006)). The motions sought dismissal of the complaint as a matter of law (see 735 ILCS 5/2–615 (West 2006)), alleging that the contents of Dr. Amabile's 604(b) report were not privileged under the Confidentiality Act. Alternatively, the motions sought dismissal of the complaint based on affirmative matter that negates the claim. See 735 ILCS 5/2–619(a)(9) (West 2006). The McCann defendants argued that the parties, as a matter of fact, did not regard the contents of the 604(b) report as confidential. Weil attached an affidavit to his motion, in which he stated that he participated in Dr. Amabile's evaluation and that she told him that her report would be disclosed to the court and counsel in that case. However, Weil had never received or read a copy of Dr. Amabile's report. Weil's attorneys each attached an affidavit to their motions, in which each stated that he or she did not possess, disclose, or redisclose the contents of the 604(b) report.

The Weil child representative, Dorothy Johnson, separately filed a section 2–619(a)(9) motion to dismiss, to which she attached an affidavit stating as follows. In late November or early December 2006, Johnson received notice of Weil's motion. On December 6, 2006, Johnson telephoned Dr. Amabile to determine whether her

section 604(b) report had any relevance to Weil's daughter. Dr. Amabile advised Johnson of three areas she evaluated: the possibility of ongoing substance (alcohol) abuse; the possibility of ongoing violence; and the ongoing impact of poor impulse control. Dr. Amabile advised Johnson that these areas of concern are relevant to the parenting of any child and are not specific or unique to any particular child. This was the extent of their telephone conversation, and Dr. Amabile did not provide any information regarding communications, opinions, or conclusions generated as a result of the section 604(b) evaluation.

The circuit court denied defendants' motions to dismiss plaintiffs' complaint.[1] Defendants filed a motion to reconsider the dismissal or, alternatively, to certify the question of law at issue in this case. The circuit court certified the above-quoted question of law and stayed the proceedings pending appellate resolution of the certified question.

The appellate court allowed defendants' application for leave to appeal and answered the certified question in the negative. 396 Ill. App. 3d 781.[2] The court concluded that information obtained pursuant to section 604(b) of the Marriage Act is not confidential and privileged under the Confidentiality Act. Accordingly, the court held that plaintiffs may not invoke the Confidentiality Act with respect to their communications with Dr. Amabile made in the course of her section 604(b) evaluation. 396 Ill. App. 3d at 792.

This court allowed plaintiffs' petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)), and plaintiffs subsequently elected to have their petition stand as their brief (Ill. S. Ct. R. 315(h) (eff. Feb. 26, 2010)). We subsequently granted the Illinois Chapter of the American Academy of Matrimonial Lawyers leave to submit an

---

[1]In addition to alleging a Confidentiality Act violation on behalf of Johnston (count I) and her parents (count II), the complaint also alleged (count III) a violation of the confidentiality provisions of the Children and Family Services Act (20 ILCS 505/1 *et seq.* (West 2006)). The circuit court dismissed this count with prejudice and plaintiffs do not appeal therefrom.

[2]While the cause was before the appellate court, plaintiffs and Weil settled. The appellate court granted the parties' agreed motion to dismiss Weil's appeal. 396 Ill. App. 3d at 782 n.1.

*amicus curiae* brief in support of defendants. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent background will be discussed in the context of our analysis of the issues.

## II. ANALYSIS

Before this court, plaintiffs contend that Johnston was the subject of, and her parents were collateral sources in, a court-ordered "psychiatric evaluation related to fitness for child custody." According to plaintiffs, the appellate court erred by exempting what they characterize as "604(b) psychiatric examinations" from the protections afforded under the Confidentiality Act. Defendants and supporting *amicus* contend that information obtained pursuant to section 604(b) of the Marriage Act is not privileged under the Confidentiality Act.

Although we ultimately answer the certified question in the negative, our analysis reveals that several unresolved variables are at work here. In other words, the certified question does not represent the full range of issues presented in this case. However, this court may go beyond the limits of a certified question in the interests of judicial economy and the need to reach an equitable result. *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995); see *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 468-72 (1998).

The certified question requires us to construe the relevant provisions of the Marriage Act and the Confidentiality Act. The primary rule of statutory construction is to give effect to the intent of the legislature. The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. The statute should be evaluated as a whole. Where the meaning of a statute is unclear from a reading of its language, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002); *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002). However, legislative intent remains the primary inquiry and controls a court's interpretation of a statute. Traditional rules of statutory construction are merely aids in determining legislative intent, and those rules must yield to such intent. *Collins v. Board of Trustees of*

*the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993). Because this issue concerns a question of law certified by the circuit court pursuant to Supreme Court Rule 308, our review is *de novo*. *Thompson v. Gordon*, 221 Ill. 2d 414, 426 (2006).


A. Disclosure: Marriage Act

Dr. Amabile compiled her report pursuant to section 604(b) of the Marriage Act. Part VI of the Marriage Act pertains to child custody. Section 602 mandates: "The court shall determine custody in accordance with the best interest of the child. *The court shall consider all relevant factors*," including specific factors listed therein. (Emphasis added.) 750 ILCS 5/602(a) (West 2006). Section 604(b) provides:

> "(b) The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis. The advice given shall be in writing and made available by the court to counsel. Counsel may examine, as a witness, any professional personnel consulted by the court, designated as a court's witness." 750 ILCS 5/604(b) (West 2006).

The appellate court concluded that the plain language of section 604(b) provides no limitations or exceptions when the court-appointed expert witness is a psychiatrist or other mental health professional, and that a court must not depart from this plain language by reading such an exception into the statute. 396 Ill. App. 3d at 785-86.

Before this court, both sides point to the plain language of section 604(b), but disagree as to its meaning. According to plaintiffs: section 604(b) "on its face limits distribution of the report to the [circuit court] and the attorneys for the litigants"; nothing in the subsection "indicates that anyone other than the attorneys will have access to this information"; and section 604(b) "limits actual use of the information to *** when the court designates the evaluator as a court's witness." Plaintiffs also contend that nothing in the language of section 604(b) "states or implies that if the ordered examination is a psychiatric examination, then the participant has waived all confidentiality rights to any psychiatric information received by the examining psychiatrist and any psychiatric reports." In contrast, defendants contend that

section 604(b), on its face, does not provide that communications with and the resulting report of the 604(b) professional are confidential. Defendants further contend that section 604(b) does not differentiate between a mental health professional and any other professional personnel.

We agree with plaintiffs that section 604(b) of the Marriage Act, considered alone, requires disclosure of the 604(b) report only in the particular proceeding in which the advice is sought. Initially, the plain language of the statute refers only to counsel in that proceeding. 750 ILCS 5/604(b) (West 2006).

Further, any reasonable difference of opinion in the meaning of section 604(b) of the Marriage Act is dispelled by a consideration of its purpose and the evils it was intended to remedy. In 1977, the General Assembly enacted the Marriage Act (750 ILCS 5/101 *et seq.* (West 2006)), which is a substantial adoption of the Uniform Marriage and Divorce Act (Uniform Marriage Act). See Unif. Marriage and Divorce Act §101, 9A U.L.A. 171 (1998); Ill. Ann. Stat., ch. 40, par. 101, at 6-7 (Smith-Hurd 1980) (referencing Uniform Marriage Act). Section 604 of the Marriage Act derives from section 404 of the Uniform Marriage Act. Ill. Ann. Stat., ch. 40, par. 604, Historical and Practice Notes, at 56 (Smith-Hurd 1980). The comment to this section in the Uniform Marriage Act explains:

> "[T]he judge may call informally on experts in a variety of disciplines without subjecting them, in the first instance, to the formal hearing process. But the experts' advice should be available *to counsel for the parties* so that the judge's decision will not be based on secret information; and *the parties* should be able to examine the expert as to the substance of his advice to the judge." (Emphases added.) Unif. Marriage and Divorce Act §404, 9A U.L.A. 381, cmt. (1998).

For these reasons, the term "professional personnel" is "intentionally broad." Ill. Ann. Stat., ch. 40, par. 604, Historical and Practice Notes, at 57 (Smith-Hurd 1980); see *In re Marriage of Auer*, 86 Ill. App. 3d 84, 88 (1980). Nonetheless, disclosure of the section 604(b) report is clearly intended to be limited to the parties in the particular proceeding. We conclude that section 604(b) of the Marriage Act confines Dr. Amabile's 604(b) report to the McCann postdissolution

proceeding.

Not only do defendants misapprehend section 604(b) of the Marriage Act, they ignore section 605, which provides the remedy intended by the legislature in cases where a party in a postdissolution proceeding seeks relevant evidence adduced in another postdissolution proceeding. The Marriage Act "should be evaluated as a whole; each provision should be construed in connection with every other section." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Section 605 of the Marriage Act provides that a parent or custodian may request the circuit court, or in a contested custody proceeding, on the court's own motion, to order "an investigation and report concerning custodial arrangements for the child." 750 ILCS 5/605(a) (West 2006). In preparing the section 605 report, the investigator may consult any person who may have information about the child and the child's custodial arrangements. Also: "The investigator may consult with and obtain information from medical, psychiatric or other expert persons who have served the child in the past, without obtaining the consent of the parent or the child's custodian." 750 ILCS 5/605(b) (West 2006). The investigator shall mail the report to the parties and counsel, and the court may examine and consider the section 605 report in determining custody. 750 ILCS 5/605(c) (West 2006). Significantly:

> "The investigator shall make available to counsel, and to any party not represented by counsel, the investigator's file of underlying data, reports, and the complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (b) of this Section, and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator, or any person whom he has consulted, as a court's witness, for cross-examination. A party may not waive his right of cross-examination prior to the hearing." 750 ILCS 5/605(c) (West 2006).

This plain language indicates that, when duly invoked, section 605 allows for disclosure in precisely the situation presented in this case.

Further, the plain language of section 605 supports the stated legislative intent:

> "The results of the investigations can aid the parties in

determining which custodial arrangements are in the child's best interest and may be useful in facilitating the settlement of disputes. *The reports can also be valuable discovery tools, as parties may call as witnesses those persons whom the investigator contacted during the course of the investigation.*" (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 605, Historical and Practice Notes, at 61 (Smith-Hurd 1980).

The legislature intended that courts and counsel consider sections 604, 605, and 606 (hearings) together in child custody proceedings. As the comment to section 404 of the Uniform Marriage Act, from which section 604 of the Marriage Act derives, explains: "This section, and the two which follow, are designed to permit the court to make custodial and visitation decisions as informally and non-contentiously as possible, based on as much relevant information as can be secured, while preserving a fair hearing for all interested parties." Unif. Marriage and Divorce Act §404, 9A U.L.A. 381, Comment (1998).

A contrary view would impede the expressed legislative goal of part VI of the Marriage Act. Child custody proceedings epitomize the need for maximum disclosure of information in the goal of reaching justice. The paramount consideration and guiding principle in determining child custody is the best interests of the child (*In re Marriage of Cotton*, 103 Ill. 2d 346, 356 (1984); *Miezio v. Miezio*, 6 Ill. 2d 469, 472 (1955)), considering all relevant factors. 750 ILCS 5/602(a) (West 2006). Therefore, the circuit court exercises broad discretion in admitting relevant evidence that may assist the court in arriving at a custody determination (see *Frees v. Frees*, 99 Ill. App. 2d 213, 219 (1968)), and the court should hear and weigh all available relevant evidence (see *Marcus v. Marcus*, 24 Ill. App. 3d 401, 407 (1974)). Section 604(b) "allows the court to seek the advice of professional personnel in order to supplement the evidence provided by the parties." Ill. Ann. Stat., ch. 40, par. 604, Historical and Practice Notes, at 57 (Smith-Hurd 1980). As defendants' supporting *amicus* observes, courts consider section 604(b) reports to be evidence of record, and consider such reports prepared by mental health professionals as prepared by any other professional personnel. See, *e.g.*, *In re Marriage of Bhati*, 397 Ill. App. 3d 53, 67-68 (2009); *Auer*, 86 Ill. App. 3d at 87-88.

We agree with the appellate court that section 604(b) of the Marriage Act provides no limitations or exceptions when the section 604(b) professional is a mental health professional. 396 Ill. App. 3d at 785-86. Although section 605 of the Marriage Act provides defendants with a remedy, we conclude that section 604(b) confines disclosure of Dr. Amabile's report to the court, counsel, and the parties in the McCann postdissolution proceeding.

B. Privilege: Confidentiality Act

Nonetheless, plaintiffs argue before this court, as they argued before the appellate court, that where the section 604(b) professional is a psychiatrist, that person is a mental health provider who renders mental health services within the meaning of the Confidentiality Act. Therefore, according to plaintiffs, the communications and information they shared with Dr. Amabile, with her resulting evaluation contained in her section 604(b) report, are confidential and privileged under the Confidentiality Act. The appellate court rejected this argument. 396 Ill. App. 3d at 786-92.

Privileges are "governed by the principles of the common law as they may be interpreted by Illinois courts in the light of reason and experience," except as otherwise provided by applicable statute. Ill. R. Evid. 501 (eff. Jan. 1, 2011). The Confidentiality Act establishes, except as provided therein, that "[a]ll records and communications shall be confidential and shall not be disclosed" (740 ILCS 110/3(a) (West 2006)), and that in any legal proceeding or preliminary proceeding, "a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." 740 ILCS 110/10(a) (West 2006). Persons injured by a violation of the Act may sue for damages or other appropriate relief, and may be awarded costs and attorney fees. 740 ILCS 110/15 (West 2006).

The records made confidential under the Confidentiality Act refer to "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided"; the communications made confidential under the Act refer to "any communication made by a recipient or other person to a therapist or

-10-

to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. Communication includes information which indicates that a person is a recipient." 740 ILCS 110/2 (West 2006). Further, the term "recipient" means "a person who is receiving or has received mental health or developmental disabilities services"; the term "therapist" means "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or developmental disabilities services"; and the term "mental health or developmental disabilities services" "includes but is not limited to examination, diagnosis, evaluation, treatment, training, pharmaceuticals, after-care, habilitation or rehabilitation." 740 ILCS 110/2 (West 2006).

In the present case, plaintiffs contend that Dr. Amabile's report is privileged under the Confidentiality Act because Dr. Amabile was a "therapist" who provided, and plaintiffs were "recipients" who received, "mental health services" as the Act defines these terms. We reject this argument, as did the appellate court. 396 Ill. App. 3d at 786-87.

Initially, this court and our appellate court have consistently recognized that the purpose of the Confidentiality Act "is to preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services." *Novak v. Rathnam*, 106 Ill. 2d 478, 483 (1985). In other words, the Confidentiality Act "was intended to include all those persons entering into a therapeutic relationship with clients." *Martino v. Family Service Agency*, 112 Ill. App. 3d 593, 599-600 (1982). The Act "only applies to situations in which the patient is seeking treatment for a mental health condition." *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 446 (1990). Accordingly, under the Confidentiality Act, where a person makes statements to a therapist in the course of a professional consultation, those statements are privileged. *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 863 (1984); *In re Marriage of Semmler*, 90 Ill. App. 3d 649, 654 (1980).

Further, courts at all levels have consistently recognized that the therapist-patient privilege is grounded in the crucial role of confidentiality in a therapeutic relationship:

> "Effective psychotherapy *** depends upon an atmosphere of confidence and trust in which the patient is willing to make a

-11-

frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. *For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.*" (Emphasis added.) *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996).

Observing that all 50 states, the District of Columbia, and the federal courts recognize some form of statutory or common law psychotherapist-patient privilege, this court reasoned: "Clearly, this reflects an understanding that people *will increasingly avail themselves of needed treatment* if they are confident that their privacy will be protected." (Emphasis added.) *Norskog v. Pfiel*, 197 Ill. 2d 60, 72 (2001); see *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 60 (2002) (same); *Laurent v. Brelji*, 74 Ill. App. 3d 214, 217 (1979) (same).

In the present case, Dr. Amabile was not retained as a therapist to treat plaintiffs. Rather, she was acting as an independent section 604(b) professional, whose sole function was to make an evaluation for the circuit court to consider. Since Dr. Amabile and plaintiffs were not engaged in a therapeutic relationship, the Confidentiality Act does not apply.

Before this court, plaintiffs contend that section 110(a)(1) of the Confidentiality Act "specifically grants special status and protection in Domestic Relations proceedings." That section provides in relevant part:

> "(1) Records and communications may be disclosed in a civil *** proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense *** . *** However, for purposes of this Act, in any action brought or defended under the [Marriage Act], or in any action in which pain and suffering is an element of the claim, mental condition shall not be deemed to be introduced merely by making such claim and shall be deemed to be introduced only if the recipient or a witness on his behalf first testifies

-12-

concerning the record or communication." 740 ILCS 110/10(a)(1) (West 2006).

Plaintiffs contend that this section expresses "legislative intent to accord specific protection to divorce litigants from disclosure of private mental health information."

We disagree. By its plain language, section 10(a)(1) applies only to prevent one party in a dissolution proceeding from accessing mental health records of the opponent by attempting to place the opponent's mental health at issue. This section is unrelated to the circuit court's appointment of a section 604(b) professional to advise the court on child custody matters, with the disclosure of that advice to all parties and their counsel. Here, there is no attempt by one party to place his or her opponent's mental health at issue. Further, as discussed above, a custody evaluation pursuant to section 604(b) of the Marriage Act does not constitute psychiatric services received for a mental condition. Accordingly, section 10(a)(1) of the Confidentiality Act does not apply to the information obtained by and the report of a section 604(b) professional.[3]

Further, as the appellate court recognized, section 10(a)(4) provides the following exception to the therapist-patient privilege:

"(4) Records and communications made to or by a therapist in the course of examination ordered by a court for good cause shown may, if otherwise relevant and admissible, be disclosed in a civil *** proceeding in which the recipient is a party or in appropriate pretrial proceedings, provided such court has found that the recipient has been as adequately and as effectively as possible informed before submitting to such examination that such records and communications would not be considered confidential or privileged." 740 ILCS 110/10(a)(4) (West 2006).

As the appellate court observed, it is undisputed that Dr. Amabile

---

[3]Plaintiffs rely on *McGreal v. Ostrov*, 368 F.3d 657, 687-90 (7th Cir. 2004), which did not consider whether a therapeutic relationship existed in the context of a police officer's mental fitness evaluation taken under orders. However, this federal case is not binding on this court. *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977).

informed plaintiffs that their communications with her were not confidential, and that her report would be presented to the circuit court, the parties and their attorneys. The appellate court concluded: "Accordingly, the communications to Dr. Amabile, as a court-appointed section 604(b) witness, could not be deemed confidential under the Confidentiality Act." 396 Ill. App. 3d at 788. We agree and so hold.

Before this court, plaintiffs argue that the appellate court's reliance on section 10(a)(4) "has effectively eviscerated" the privilege established in section 10(a). This argument is unavailing. Section 10(a)(4) speaks to situations where disclosure is *discretionary*. In contrast, the disclosure of the section 604(b) report and its contents to the opposing party and counsel is *mandatory* pursuant to section 604(b) of the Marriage Act. Accordingly, section 110(a)(4) of the Confidentiality Act does not apply to the contents of a 604(b) report.

Nonetheless, plaintiffs continue to rely on *Norskog v. Pfiel*, 197 Ill. 2d 60 (2001), in support of their argument that the communications and information contained in Dr. Amabile's 604(b) report are privileged. In *Norskog*, the circuit court ordered the defendants, the patient who received mental health services as a minor and his parents, to identify the mental health service providers seen by the patient and to disclose information regarding the patient's diagnosis and treatment as part of discovery in a civil wrongful death action. Defendants failed to comply with the discovery orders, and appealed from the resulting contempt citations. *Id.* at 64-68. This court held that the circuit court erred when it held the defendants in contempt because the information was privileged under the Confidentiality Act, and no exception allowed for disclosure in that case. *Id.* at 86-87.

After fully discussing *Norskog*, the appellate court correctly concluded that *Norskog* was distinguishable from the present case. 396 Ill. App. 3d at 789-90. *Norskog* was governed by the strict requirements of section 104–14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104–14(a) (West 2006)), which mandated that statements made by a defendant and information gathered during a court-ordered mental-fitness examination "shall not" be admissible against the defendant unless he raises an insanity or similar defense, which that defendant did not do. Further, unlike section 604(b) of the

Marriage Act, the criminal statute at issue in *Norskog* explicitly prohibits any other use of statements made by a defendant in a criminal fitness examination without the defendant's informed written consent. 725 ILCS 5/104–14(b) (West 2006); *Norskog*, 197 Ill. 2d at 77.

In the present case, plaintiffs did not undergo a criminal forensic evaluation governed by the strict requirements of the Code of Criminal Procedure. Rather, they participated in interviews with a section 604(b) professional to advise the circuit court in making a custody determination. Unlike section 104–14(a) of the Code of Criminal Procedure, section 604(b) of the Marriage Act does not require that a person from whom the 604(b) professional obtains information give written informed consent before such information contained in the 604(b) report may be used in any proceeding. To the contrary, 604(b) reports *must* be given to both parties and their counsel, and the 604(b) professional remains available to testify at trial as the court's witness subject to examination by both parties. *Norskog* does not apply to the present case.

This court has repeatedly recognized that the Confidentiality Act constitutes "a strong statement" by the legislature about the importance of keeping mental health records confidential. *Reda*, 199 Ill. 2d at 60; *Norskog*, 197 Ill. 2d at 71-72. We expressly reaffirm this unmistakable legislative intent. However, the Confidentiality Act simply does not apply in the present case because Dr. Amabile and plaintiffs were not engaged in a therapeutic relationship.

In the case at bar, we conclude that section 604(b) of the Marriage Act does not distinguish mental health personnel from other 604(b) professional personnel. Further, although section 605 provides defendants with a remedy, section 604(b) confines Dr. Amabile's report to the McCann postdissolution proceeding. Additionally, the Confidentiality Act does not apply in this case.

We observe that, in *dicta*, the appellate court discussed possible remedies that plaintiffs could pursue as an alternative to a Confidentiality Act claim. 396 Ill. App. 3d at 791. While we have reviewed the record in the interests of judicial economy and the need to reach an equitable result (*Bright*, 166 Ill. 2d at 208), we find that the appellate court's suggested remedies fall outside the proper scope of our review of the certified question. See *Vision Point of Sale, Inc.*

*v. Haas*, 226 Ill. 2d 334, 358 (2007).

### III. CONCLUSION

For the foregoing reasons, we answer the certified question in the negative, and remand the cause to the circuit court for further proceedings consistent with this opinion

Certified question answered;

cause remanded.

JUSTICE THEIS took no part in the consideration or decision of this case.

CHIEF JUSTICE KILBRIDE, dissenting:

The certified question requires this court to construe the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2006)) on whether mental health information obtained by a psychiatrist or other mental health professional under a court order pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/604(b) (West 2006)) is confidential. The majority correctly recognizes that the central purpose of the Confidentiality Act is to preserve the confidentiality of mental health information. Nonetheless, the majority answers the certified question negatively, holding that mental health information provided to a psychiatrist or other mental health professional in a court-ordered section 604(b) report is not confidential. The majority reasons that the Confidentiality Act is intended to make confidential only information obtained when a person is in a therapeutic relationship with a mental health professional, a relationship purportedly outside a section 604(b) report created pursuant to court order. Slip op. at 11-12.

I disagree and therefore respectfully dissent. In my view, the majority's decision contravenes the undisputed legislative intent underlying the Confidentiality Act, namely, the vigorous protection of the confidentiality of mental health information. As even the majority recognizes, this court has consistently determined that the

-16-

Confidentiality Act constitutes a "strong statement" by the legislature about the importance of keeping mental health records confidential. Slip op. at 15 (citing *Reda v Advocate Health Care*, 199 Ill. 2d 47, 60 (2002), and *Norskog v. Pfiel*, 197 Ill. 2d 60, 71-72 (2001)). In fact, the legislature has carefully restricted disclosure of mental health information to certain statutory exceptions, with each exception subject to a narrow construction. *Norskog*, 197 Ill. 2d at 71. Contrary to clear legislative intent, the majority effectively holds that mental health information divulged in a court-ordered section 604(b) report is *never* confidential. Simply stated, the majority has created a broad and unwarranted exception to the Confidentiality Act.

The plain language of the Confidentiality Act shows that the certified question should be answered affirmatively. Specifically, section 10 of the Confidentiality Act, entitled "Disclosure in civil, criminal, and other proceedings," identifies several exceptions to the Confidentiality Act's blanket prohibition on the disclosure of mental health information. Critically, section 10(a)(4) addresses the precise issue presented in the certified question, the disclosure of mental health information in a court-ordered examination, providing that:

> "Records and communications made to or by a *therapist in the course of examination ordered by a court* for good cause shown may, if otherwise relevant and admissible, be disclosed in a civil, criminal, or administrative proceeding in which the recipient is a party or in appropriate pretrial proceedings, provided such court has found that the recipient has been as adequately and as effectively as possible informed before submitting to such examination that such records and communications would not be considered confidential or privileged. Such records and communications shall be admissible only as to issues involving the recipient's physical or mental condition and only to the extent that these are germane to such proceedings." (Emphasis added.) 740 ILCS 110/10(a)(4) (West 2006).

Thus, the plain language of section 10(a)(4) allows for disclosure of mental health information obtained in a court-ordered examination only if two important conditions are met: (1) the information must be relevant, germane, and admissible in the proceeding at issue and (2) the recipient must be adequately and effectively informed that any

-17-

record or communication is not confidential before submitting to the court-ordered examination.

Clearly, if section 10(a)(4)'s conditions are not satisfied, the legislature intended that the mental health information in the court-ordered examination remain confidential, consistent with the overarching legislative goal of the Confidentiality Act to safeguard the confidentiality of that information. Therefore, directly rebutting the majority's holding, the plain language of section 10(a)(4) demonstrates that the legislature contemplated instances when mental health information obtained during a court-ordered examination would not be divulged.

Rather than acknowledging the legislative intent underlying section 10(a)(4), the majority attempts to distinguish the provision by noting that disclosure of mental health information is discretionary under section 10(a)(4) but disclosure of a report under section 604(b) is mandatory. Slip op. at 13-14. That distinction, however, is of little, if any, consequence, and should certainly not be considered dispositive after a careful comparison between section 10(a)(4) of the Confidentiality Act and section 604(b) of the Marriage Act.

As noted, section 10(a)(4) of the Confidentiality Act specifically addresses mental health information obtained in a court-ordered examination. In particular, section 10(a)(4) makes admission of the information *discretionary*, indisputably showing that the legislature intended for the trial court to have authority to refuse to admit mental health information and maintain its confidentiality. Moreover, contrary to the majority's conclusion, nowhere does section 10(a)(4) contain any language indicating the legislature intended to limit its application to a therapeutic relationship. Indeed, the Confidentiality Act defines a "therapist" as "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health *** services." 740 ILCS 110/2 (West 2006). Under the Confidentiality Act, the types of "services" a therapist may provide include "examination" and "evaluation" (740 ILCS 110/2 West 2006)), as well as the more traditionally recognized therapeutic services of treatment, training, pharmaceuticals, habilitation or rehabilitation, and aftercare. See 740 ILCS 110/2 (West 2006). Thus, the majority's determination that the Confidentiality Act's application is limited to situations involving a purely therapeutic relationship is not supported by the plain meaning

-18-

of the statutory language, the best indicator of legislative intent.

The majority's interpretation directly conflicts with the plain language of section 10(a)(4), making the Confidentiality Act applicable to "[r]ecords and communications made to or by a therapist *in the course of examination ordered by a court.* (Emphasis added.) 740 ILCS 110/10(a)(4) (West 2006). Court-ordered examinations alone would rarely, if ever, constitute the "therapeutic relationship" required by the majority for application of section (10)(a)(4). If the legislature intended the Confidentiality Act to apply only during the course of "therapeutic relationships," it would not have specially addressed disclosures related to "[r]ecords and communications" that occurred during traditionally non-therapeutic examinations "ordered by a court" in a "civil, criminal, or administrative proceeding." 740 ILCS 110/10(a)(4) (West 2006).

*Norskog* also supports the conclusion that the Confidentiality Act was intended to protect records and communications made during various types of court-ordered examinations. In *Norskog*, this court determined that the Confidentiality Act protected records and communications from a court-ordered fitness evaluation from disclosure in a civil proceeding when the therapist failed to mention that potential disclosure. *Norskog*, 197 Ill. 2d at 77. Although the court-ordered evaluation in *Norskog* was in a criminal proceeding, the same general principles are applicable here.

In comparison, section 604(b) of the Marriage Act, relied on by the majority, is silent on the admission of mental health information obtained through a court-ordered examination. Instead, the provision speaks generally on the trial court's authority in proceedings under the Marriage Act to obtain the written "advice of professional personnel" that must also be made available to the parties' respective counsel. 750 ILCS 5/604(b) (West 2006). Notably, section 604(b) has no requirement that otherwise confidential mental health information, whether obtained in a therapeutic relationship or not, must always be disclosed. Consequently, the majority's assertion that section 604(b) requires mandatory disclosure of mental health information obtained during a court-ordered examination is not supported by the statutory language.

I agree with the majority's observation that section 604(b) of the Marriage Act promotes thorough consideration of a child's best

interests and epitomizes the need for maximum disclosure of information in child custody proceedings. I strongly disagree, however, with the majority's final determination that mental health information in a court-ordered report under section 604(b) can *never* be confidential under the Confidentiality Act.

In my opinion, the need for full disclosure in child custody proceedings under section 604(b) of the Marriage Act should be balanced with the equally important goal of protecting the confidentiality of an individual's mental health information under the Confidentiality Act. I believe the legislature struck the proper balance when it enacted section 10(a)(4) of the Confidentiality Act by authorizing the disclosure of mental health information from a court-ordered examination when it is relevant to the proceedings and the individual has been informed that it would not remain confidential. The majority's holding circumvents the legislature's thoughtful balancing of those interests. The majority has created a harsh exception that automatically admits *all* sensitive mental health information in section 604(b) reports in *every* case, regardless of whether that information is relevant or the individual was made aware that the information would be divulged.

In summary, the legislature's intent underlying the language of section 10(a)(4) of the Confidentiality Act, addressing the precise issue here, should control when compared to section 604(b) of the Marriage Act, silent on the issue. Accordingly, I would answer the certified question affirmatively, holding that mental health information from a court-ordered examination in a section 604(b) report is confidential and inadmissible unless the requirements for its admission under section 10(a)(4) of the Confidentiality Act are met. This approach properly balances the need for full disclosure under the Marriage Act with the need to protect the confidentiality of mental health information under the Confidentiality Act.